En banc.
PER CURIAM.
In a previous appeal of this case, we, on our motion, found the State Bond and Building Commission is an indispensable party. We remanded the matter to the district court to permit the plaintiff to amend his petition to make the State Bond and Building Commission a party defendant, 231 So.2d 652. In compliance with our decree, the plaintiff amended his petition, joining the State Bond and Building Commission as a party defendant. The case is now before us on a second appeal.
The plaintiff is Harvey Fuselier, a taxpayer, elector and resident of the State of Louisiana. In his original and supplemental petitions, he brings a class ac *244 tion to enjoin the State Bond and Building Commission from issuing certain bonds and the State Market Commission from receiving the proceeds and using them to make a loan of $40,000 to Crowley Grain Drier, Inc. The alleged basis for the injunctions sought is that Act 172 of 1969, the statute which authorizes the issuance of the bonds and the use of the proceeds for the loan, is unconstitutional.
The defendants sought to be enjoined are (1) the State Bond and Building Commission, the agency authorized by the statute to issue the bonds, (2) the State Market Commission, which is authorized to receive the funds and make the loan, (3) Crowley Grain Drier, Inc., the party seeking this particular loan of $40,000, to build a rice dryer and (4) Mr. Dave Pearce, Commissioner of Agriculture and Immigration. These defendants filed an exception of no cause of action on the grounds that, accepting as true all allegations of fact in plaintiff’s petition, he is not entitled to the injunctive relief sought since Act 172 of 1969 authorizes all of the actions sought to be enjoined and that statute is constitutional. The district judge sustained the exception and dismissed plaintiff’s suit. Plaintiff appealed.
The substantial issue is whether Act 172 of 1969 violates LSA-La.Const. art. 4, sec. 2, which limits the power of the legislature to contract or authorize the contracting of any debt on behalf of the state.
Act 172 of 1969; the statute whose constitutionality is attacked,[1] provides generally that the State Bond and Building Commission is authorized to issue and sell bonds, in an amount not to exceed $2,000,-000, which funds are to be made available to the State Market Commission. The bonds are to be paid from the fifty-three hundredths (0.53) of one mill tax, levied upon all taxable property within the State of Louisiana and paid into the General Fund for the general operation of state government, LSA-R.S. 47:1704, subd. D. Furthermore, the bonds are to be general obligations of the State of Louisiana entitled to the full faith and credit of the state. The statute then provides that the proceeds of the bonds shall be used by the State Market Commission to make loans for certain specified projects enumerated in the act and in the order of priority set forth.
The second item listed is a loan of $40,-000 for a rice dryer in Crowley, Louisiana. The stipulated facts show that if the bonds are sold and the money is available, the loan of $40,000 for a rice dryer in Crowley will be made to the defendant, Crowley Grain Drier, Inc., a private corporation.
LSA-La.Const. art. 4, sec. 2, as amended in 1966, reads in pertinent part as follows :
“Except as otherwise provided herein, the Legislature shall have no power to contract directly or through any State Board or State Agency the incurring of debt or the issuance of bonds involving the dedication of all or any part of the tax revenues imposed and collected by the state except upon the two-thirds vote of the elected membership of each of the Houses and then only if the funds are to be used to make capital improvements, repel invasion or suppress insurrection. If the purpose is to make capital improvements, the nature, approximate location and, if more than one project, the amount allocated to each and the order or priority shall be stated in the Act or in a capital budget otherwise adopted according to law. The full faith and credit of the State shall be pledged to the repayment of such bonds or other evidences of indebtedness. Public referendum shall not be required. This prohibition shall not apply to cities, towns and villages, parishes, school boards or any other local political subdivisions of any kind; nor shall it apply *245 to any state board, authority, commission or other state agency empowered by other Constitutional authorization or to any law adopted by the Legislature within the scope of any such other Constitutional authorization; nor shall it apply to any state board, authority, commission or other state agency created by an Act of the Legislature with respect to any proposed debt to be incurred thereunder and any proposed bonds to be issued in connection therewith where secured solely from the revenues of the project.” (emphasis supplied)
The bonds authorized by Act 172 of 1969 are to be paid by tax revenues imposed and collected by the state. Hence, it is clear the statute is unconstitutional unless it falls within one of the exceptions set forth in La.Const. art. 4, sec. 2.
Defendant’s first argument is that the funds are to be used to make “capital improvements” within the meaning of this exception to Art. 4, Sec. 2. They contend that since the funds are ultimately to be used by a private corporation to construct a rice dryer, which is immovable real property, this is sufficient to satisfy the constitutional requirement that the bond proceeds be used “to make capital improvements.” We cannot agree. The proceeds of these bonds are not to be used by any state board or state agency to make capital improvements. Instead, the funds are to be used by a state agency to make a loan. The language of Art. 4, Sec. 2 clearly contemplates that the “capital improvements” must be made by a state board or state agency.
Defendants next contend the statute falls within the exception to Art. 4, Sec. 2, which states that the prohibition shall not apply “to any state board, authority, commission or other state agency empowered by other constitutional authorization * * * ” They argue there is other constitutional sanction for the legislature to authorize the issuance of bonds to provide funds for the State Market Commission to make these loans. This contention is based on LSA-La.Const. art. 4, sec. 12-b, which reads as follows:
“The State Market Commission shall have the power and authority to lend or underwrite, participate in or guarantee the repayment of twenty-five (25%) per centum of any loan made by any bank, financial institution or Federal agency for the purchase, expansion, improvement or construction of any agricultural plant, which, in the judgment of said Commission, may provide additional facilities for the processing, marketing, distributing or storing of agricultural products of the State, to the end that agricultural products of the state may be better preserved and marketed, and the Legislature is authorized to make such appropriations as it may deem necessary to effectuate the provisions of this paragraph.
This section shall be self-operative. (Added Acts 1944, No. 319, adopted Nov. 7, 1944.)” (emphasis supplied)
Defendants say the authorization for the legislature to make “appropriations” to the State Market Commission, under Art. 4, Sec. 12-b, quoted above, includes the right to authorize bond issues and deliver the proceeds to this state agency. We cannot agree. An “appropriation” is an authorization by the legislature to draw available money from the State Treasury for a specified purpose, LSA-La. Const, art. 4, secs. 1, 9, 10 and 11; Carso v. Board of Liquidation of State Debt, 205 La. 368, 17 So.2d 358; Branton v. Parker, 233 So.2d 278 (1st Cir. 1970). We find no authority to support the contention that the right to “appropriate” funds includes the right to borrow money, through bond issues, to make these funds available. If the courts construe the word “appropriation”, as used in the constitution, to authorize the legislature to issue bonds, it would mean that the legislature could authorize the issuance of bonds to borrow money for any purpose for which it is au *246 thorized to make an appropriation. In effect, this would remove all constitutional limitations on bond issues. We think it is clear the electorate had no such intention when it adopted Louisiana Const., art. 4, sec. 12 — b.
Defendants contend the recent case of Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362 (1969) construes a constitutional authorization for the legislature to make “appropriations”, as including authorization for the legislature to issue bonds secured by the full faith and credit of the state. We find the Arata case is distinguished.
The issue in Arata was the construction of LSA-La.Const. art. 14, sec. 47. This constitutional amendment authorizes the Louisiana Stadium & Exposition District (composed of Orleans and Jefferson Parishes) to finance, construct and operate a domed stadium. Paragraph (E) of the amendment authorizes the district to lease the stadium to the state and provides that the obligations of the state under such lease “shall constitute a charge against the revenues of such lessee * * * ” Pursuant to these provisions, the district entered into an agreement to lease the stadium to the state, under an arrangement whereby the state is required to pay the rentals to the trustee of the bond holders. These agreements were attacked on the grounds that they violated paragraph (S) of the constitutional amendment, which expressly provides “No bond issued under this amendment shall be secured by the faith and credit of the state.”
The majority opinion in Arata held that, conceding arguendo the lease indirectly creates a full faith and credit obligation of the state to secure the bonds, this would mean that the provisions of paragraph (E) and paragraph (S) of the amendment are in conflict. Paragraph (E) expressly authorizes the state to lease the stadium from the district with the rentals constituting “a charge against the revenues of such lessee”, which means the rental payments due by the state are backed by all of the taxes which it collects. Indirectly, this places the full faith and credit of the state behind the bonds, whose payments are secured by rentals under the lease. Under such a construction there is a violation of paragraph (S) which provides that no bonds issued under this amendment shall be secured by the full faith and credit of the state. Nevertheless, the majority opinion reasons that even assuming these two paragraphs of the constitutional amendment are in conflict, the provisions of paragraph (E) are special and therefore prevail over those in paragraph (S), which are general.
From the above discussion of the Arata case, it is apparent that the decision is concerned with the conflict between provisions of the same constitutional amendment and has no application to any other constitutional amendment.
However, defendants contend the following language in the Arata case construes the word “appropriate” to include the right of the legislature to authorize bond issues backed by the full faith and credit of the state:
“The right of the State to ‘appropriate funds’ to discharge an obligation is the right to commit itself unconditionally from its entire resources. In the same manner, when an obligation ‘constitutes a charge against the revenues of the State, it is in reality a full faith and credit transaction, for a State’s revenues are derived from many sources. Primarily revenue is obtained from the State’s general power of taxation, including property taxation. A charge against the State’s revenues is therefore a charge against its general taxing power. The definition of ‘full faith and credit’ makes it clear that when this taxing power is available to secure a transaction the essential element of a full faith and credit or general obligation transaction is satisfied.”
*247 It is obvious that in the above quotation the court is referring to the rent due under the lease. It is saying the legislature has the right to appropriate funds to pay the rent and, since these appropriations come from general state taxes, the rental payments are, in effect, full faith and credit obligations. But, the language quoted from Arata cannot be interpreted to mean that the right to “appropriate funds” from general state taxes includes the right to issue bonds secured by these taxes. Appropriations are entirely different from bond issues. An “appropriation” is the allocation by the legislature of certain available funds in the state treasury. A “bond issue” involves borrowing money which is not otherwise available.
Generally, the court in Arata was concerned with the construction of certain special constitutional provisions, none of which have any bearing on the present case. Arata is not authority for the proposition that every constitutional provision, which authorizes the legislature to “appropriate” funds, includes the right to authorize the issuance of bonds secured by the full faith and credit of the state.
Defendants also cite the recent case of Branton v. Parker, 233 So.2d 278 (1st Cir. 1970) to support its interpretation of the word “appropriation”. There, the constitutionality of a statute raising the salaries of legislators was attacked on the grounds that it violates Louisiana Constitution art. 4, secs. 1 and 11, which require an appropriation by the legislature to draw funds from the state treasury. The statute in question did not expressly provide an “appropriation” but instead allowed these state officials to draw warrants for their own salaries. The court held the use of the word “appropriation” is not sacramental so long as similar words express the same meaning. The Branton case has no application in the present controversy.
Defendants next argue the statute in question falls within the exception to La. Const, art. 4, sec. 2 that it shall not apply “to any law adopted by the legislature within the scope of any such other constitutional authorization;” (emphasis supplied). The contention here is that Act 172 of 1969, which authorizes the issuance of bonds and the making of loans to private parties for agricultural facilities, is within the “scope” of Louisiana Constitution article 4, section 12-b, which authorizes the State Market Commission to make such loans. This argument has no merit. The "scope” referred to in article 4, section 2 is the scope of other constitutional authorizations to issue bonds. The legislature is permitted to adopt laws which are within the “scope” of other constitutional provisions which authorize the issue and sale of bonds. The word “scope” does not refer merely to the purposes and functions permitted state agencies by the Constitution. If the courts were to hold that the legislature can authorize the issuance of bonds for any purpose which is within the “scope” of the function of a constitutionally designated state agency, it would mean that bonds could be issued to raise money for any state agency to accomplish any of its purposes. For instance, this Court of Appeal could be authorized to issue bonds to raise money to pay its employees. We think it is clear no such construction is intended.
It is our conclusion that Act 172 of 1969 is unconstitutional since it violates La.Const. art. 4, sec. 2. Having reached this decision, it is unnecessary for us to consider these additional attacks made on the statute: (1) That it violates LSA-La. Const, art. 4, sec. 12, which prohibits the loan, pledge or grant of state funds, property or credit for any private enterprise. (2) That the enumerated projects for which the bond proceeds are to be used under Act 172 of 1969 are not restricted to the purposes authorized by LSA-La.Const. art. 4, sec. 12-b.
For the reasons assigned, the district court judgment, sustaining defendants’ exception of no cause of action, is reversed *248 and set aside. This case is remanded to the district court for further proceedings in accordance with law and the views expressed herein.
Reversed and remanded.
On Application for Rehearing.
En Banc. Rehearing denied.

. See our decision in the previous appeal for a quotation in full of the pertinent provisions of the statute.