394 A.2d 1101.

## GENERAL ELECTRIC COMPANY *vs.* PAUL FORSELL & SON, INC. *et al.*

NOVEMBER 16, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J. This litigation, which has been pending within our judicial system for over 10 years, involves a suit upon a bond in which the defendant, Paul Forsell & Son, Inc. (Forsell), is the principal and the defendant insurer is surety. They appeal from a final judgment entered in the Superior Court in favor of the plaintiff, General Electric Company, for $3,037.50 plus interest and costs. Hereinafter we shall proceed as if Forsell were the only defendant.

Forsell is a general contractor. Sometime in 1966 it was a successful bidder on a contract calling for the construction of new headquarters for the Providence Lodge of Elks, No. 14 (the Elks). On June 8, 1966, as part of its contractual commitment, Forsell provided the lodge with a labor-material payment surety bond in the amount of $449,500 guaranteeing payment for anyone having "a direct contract with the Principal or a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract * * * ." During October and November of 1967, Forsell's electrical subcontractor, Rhode Island Electrical Service, Inc., ordered electrical fixtures and equipment from General Electric. Shortly thereafter the subcontractor went bankrupt, owing General Electric $3,037.50. In due course, General Electric looked to Forsell and its surety for payment.

Suit was commenced on March 21, 1968. We have before us a record which is replete with many motions and requests as the litigants sought to take advantage of the pretrial discovery techniques afforded by the Superior Court Rules of Civil Procedure. The record indicates that on November 28, 1973, and again on March 19, 1975, General Electric, acting pursuant to Super. R. Civ. P. 36, filed a "Request for Admissions" in which, among other matters, Forsell was asked to admit that the copy attached to each request was a true copy of the payment bond and that the original bond was signed by a duly authorized officer. Forsell filed no response to either request.

After General Electric's first witness had concluded his testimony on the first day of a trial which began on Friday, December 5, 1975, Forsell's trial attorney sought to withdraw the admission which conceded the genuineness of the bond and the propriety of the signatures which appeared thereon. The trial justice denied Forsell's motion to withdraw its admission, and on Monday after both parties had rested, the trial justice granted General Electric's motion for a directed verdict by ordering the jury to return a verdict in favor of plaintiff for $3,037.50. Forsell's appeal consists of its challenges to the denial of the motion to withdraw its admission and the grant of the motion for a directed verdict. We shall discuss the denial first and the grant second.

As noted earlier, the withdrawal motion came on the first day of the 2-day trial. In pressing his motion, Forsell's attorney claimed that he had "new evidence" based on a noontime conversation with Forsell's president, Gordon Forsell, that the president had never signed the bond. After listening to General Electric's protest, the trial justice remarked that he was denying the motion without prejudice and told Forsell's counsel that if he could produce the original bond in court on Monday, he would reconsider the motion. Monday came, but the original bond was not produced. In fact, General Electric did produce as its witness a longtime

secretary of the lodge, who reported that he could not find the original bond which had been filed with the Elks.

Assuming that the trial justice's without-prejudice denial of Forsell' motion is reviewable, we can find no error. Prior to a 1970 amendment, some question existed concerning whether an admission made pursuánt to Fed. R. Civ. P. 36 was binding on the party making it. *See* 8 Wright & Miller, *Federal Practice and Procedure* §2264. The present rule, as amended, now specifically provides that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment * * * ." Fed. R. Civ. P. 36(b).

Our Rule 36, like its pre-1970 federal counterpart, is silent as to conclusiveness. In seeking guidance in this area, we look to the actions taken by the federal courts, a majority of which have tended to consider admissions made under the un-amended version of Rule 36 as having a binding effect. *Mangan* v. *Broderick and Bascom Rope Co.*, 351 F.2d 24, 28 (7th Cir. 1965); *McSparran* v. *Hanigan*, 225 F. Supp. 628, 636-37 (E.D. Pa. 1963); *United States* v. *Taylor*, 100 F. Supp. 1016, 1019 (W.D. La. 1951); *Dulansky* v. *Iowa-Illinois Gas & Electric Co.*, 92 F. Supp. 118, 123 (S.D. Iowa 1950). *See also Murnan* v. *Joseph J. Hock, Inc.*, 274 Md. 528, 535, 335 A.2d 104, 106-07 (1975).

There are, however, decisions to the contrary. *Ark-Tenn Distributing Corp.* v. *Breidt*, 209 F.2d 359, 360 (3d Cir. 1954); *United States* v. *Lemons*, 125 F. Supp. 686, 688-90 (W.D. Ark. 1954). The holding of the latter cases that admissions under the rule merely "stand in the same relation to the case that sworn testimony bears," *Ark-Tenn Distributing Corp.* v. *Breidt*, 209 F.2d at 360, was based on the concept that technical considerations will not be allowed to prevail to the detriment of substantial justice.[1] These holdings, however, are subject to vigorous criticism. *See* Finman, *The*

---

[1] In making its motion, Forsell relied upon *Ark-Tenn Distrib. Corp.* v. *Breidt*, 209 F.2d 359 (3d Cir. 1954).

*Request for Admissions in Federal Civil Procedure*, 71 Yale L.J. 371, 418-26 (1962).

At this juncture it is important that we recognize the purpose of the rule. Rule 36 established a "procedure * * * for facilitating the proof at the trial by weeding out facts and items of proof over which there is no dispute, but which are often difficult and expensive to prove." 4A Moore; *Federal Practice* §36.02 at 36-15 (1978). If the rule is to fulfill this undisputed function, the admissions provided by the rule must be considered as binding. Otherwise, a party securing an admission could not rely upon its binding effect and safely avoid the expense of preparing to prove the very matter on which he has obtained the admission.

Although Rule 36 would lose its efficacy if admissions could be easily contradicted, unquestionably there will be times when a party should be allowed to withdraw an admission. An admission may be withdrawn (1) if the admitting litigant has acted diligently; (2) if adherence to the admission might cause a suppression of the truth; and (3) if the withdrawal can be made without prejudice to the party who made the request. Finman, *The Request for Admissions in Federal Civil Procedure*, 71 Yale L.J. 371, 422 (1962).

In assessing Forsell's diligence, we look to the record. On May 22, 1968, General Electric sought the production of any copy of the bond that guaranteed payments for material that might have been purchased for use in the Elks' home. Forsell furnished an unsigned copy which served as the basis for General Electric's requests for admissions. The 1973 and 1975 requests for admissions to which we have previously referred went unanswered, and under the pertinent part of Rule 36(a) these lacks of response are deemed to be equivalent to admissions.

Of more than passing interest, however, is a rescript written by the late distinguished Superior Court justice, Fred B. Perkins, as he was considering General Electric's motion for a summary judgment in the light of a counter-affidavit submitted by Forsell's president, Gordon Forsell. The motion

was heard in late 1968, and Justice Perkins in his early January 1969 rescript noted that the record disclosed "no question raised but that the bond was in force and under its provisions the plaintiff would be entitled to recover if the materials were furnished as it states and were not paid for * * * ." Apparently Justice Perkins, in denying the motion for summary judgment, observed that Forsell was entitled to pursue the discovery proceedings because the contractor was having difficulty identifying the items furnished by General Electric (the subcontractor had done business with a number of other electrical suppliers), and thus Forsell should have to "face double demands for the same items." In the light of these 1969 observations, the diligence of Forsell in denying the lack of its chief executive's signature on the bond given to the Elks is, to say the least, suspect.

What is obvious from the record is the prejudice suffered by General Electric. Forsell's sudden switch came as a complete surprise to the supplier, and the events of Monday demonstrate that a withdrawal of the admission first made 2 years before at trial would prejudice the one who had requested and sought its admission. The lodge's secretary testified that he could not locate the original bond that Forsell had given the Elks. He pointed out that the lodge's office clerk at the time of the execution of Forsell's contract and the filing of the payment bond had died. The secretary also reported that a search by one of his assistants during the weekend failed to uncover the signed bond. Limiting our consideration solely to the issue of prejudice to General Electric, we find that prejudice was clearly patent and that we cannot fault the trial justice's denial of Forsell's withdrawal request.

The trial justice's grant of General Electric's motion for a directed verdict, so far as it relates to General Electric's right to recover damages, needs little discussion. While Forsell attempts to gain great advantage out of a discrepancy in the testimony concerning whether all of the fixtures ordered from General Electric in 1967 were actually in place in the

Elks' new headquarters at the time of trial, the builder has apparently failed to examine the terms of the bond carefully. Liability under the bond is not predicated solely on the actual installation of fixtures in the Elks' building. As noted before, Forsell was obligated to pay anyone having a direct contract with one of its subcontractors for material "used or *reasonably required for use* in the performance of the contract." (Emphasis added.)

Testifying at trial was Daniel Maloney, who had spent 30 years in General Electric's employ selling electrical supplies. Back in the midsixties Maloney obtained from the subcontractor a copy of the plans and specifications indicating the Elks' electrical needs and then submitted a "quotation" that listed the various types and the costs of the fixtures which General Electric proposed to furnish. When Maloney first testified on December 5, 1975, he said that everything ordered was shipped to the construction site. Later, on Monday, Maloney returned to the witness stand and reported that on the previous Saturday he had gone to the Elks' home to find and count the installed fixtures which had been supplied some 8 years earlier. During Monday's cross-examination Maloney conceded that he could not find all of the fixtures listed in the original invoices. However, on the prior Friday during cross-examination Maloney gave an affirmative response when asked by Forsell's trial counsel if all the fixtures sold to the subcontractor were "reasonably required for use in the performance of the contract." This evidence, which was unimpeached and uncontradicted, when considered with Forsell's pretrial admissions, left no question of fact to be resolved by the jury.

Long ago this court ruled that a verdict should be directed for the plaintiff when there is no conflicting evidence and the evidence clearly shows the right of the plaintiff to a verdict. *Lewis Mears Co.* v. *Norfolk County Creamery*, 48 R.I. 221, 222, 137 A. 149, 150 (1927). Admittedly, such cases are rare, but the case at bar fits within this category. Since the only direct, positive evidence in this case shows that the fixtures

supplied by General Electric were reasonably required for use in the performance of the 1966 contract, the trial justice was warranted in directing a verdict, at least insofar as Forsell's liability under the bond was concerned. However, he erred when he told the jury to return a verdict for General Electric in the amount of $3,037.50.

The trial justice's direction to the jury that it return a verdict for General Electric in the amount of $3,037.50 violates the procedure prescribed by G.L. 1956 (1969 Reenactment) §§9-27-1, -2, as these sections have been construed in this court. *See City of Providence* v. *Goldenberg*, 44 R.I. 327, 330, 117 A. 225, 226 (1922); *Bowen* v. *White*, 26 R.I. 68, 71, 58 A. 252, 254 (1904). In their relevant portions these sections stipulate that (1) in all actions for the breach of the condition of a bond, when it appears that the condition is broken, judgment shall be entered for the penal sum of the bond and (2) execution, however, shall issue only for "so much of the penal sum as shall then be due and payable in equity and good conscience, for the breach of the condition * * * ," and the amount for which execution shall issue is to be determined with or without the intervention of a jury.

Construing these provisions, this court in *City of Providence* v. *Goldenberg*, 44 R.I. at 330, 117 A. at 226, said: "We think it was the intention of the legislature, as expressed by sections of the statute above quoted, that judgment shall be entered for the penal sum before the court shall proceed, either with or without a jury, to determine for what sum execution shall be awarded." In disposing of the contention that there would be a saving of time and effort by having the amount for which the execution should issue determined at the time of the decision or verdict for the penal sum, the court stated: "It is a sufficient answer to say that the legislature has prescribed a different procedure." *Id.* at 330, 117 A. at 227. The sentiments expressed have been repeated in *Sormanit* v. *Deacutis*, 79 R.I. 361, 365, 89 A.2d 191, 194 (1952), and *Goucher* v. *Herr*, 65 R.I. 246, 250, 14 A.2d 651, 653 (1940). There is nothing we can add. Damages must be

assessed in accordance with the chancerizing procedure set forth in the statute.

The defendants' appeal is sustained only insofar as it relates to the trial justice's failure to follow the dictates of §§9-27-1, -2, and in all other respects it is denied, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*Coffey, McGovern and Novogroski, Charles J. McGovern,* for plaintiff.

*John E. Fornaro, Jr.,* for defendants.