## In re ADVISORY OPINION TO the GOVERNOR.

### No. 85–121–M.P.

Supreme Court of Rhode Island.

June 13, 1986.

Arlene Violet, Atty. Gen., Ann M. Sheadel, Asst. Atty. Gen., Thomas Martin, Spec. Asst. Atty. Gen. Mary Urso, Asst. Legal Counsel, Dept. of Transp., James J. Mullen Barrington, for plaintiff.

Alfred B. Stapleton/George C. Nixon, Tillinghast Collins & Graham, amicus curiae, Providence, for defendant.

His Excellency Edward D. DiPrete
   Governor of the State of Rhode
   Island and Providence Plantations

This communication is a response to Your Excellency's inquiry relative to Act 114 of the Rhode Island Acts and Resolves (1984), p. 111, which orders the Director of Transportation to repair and maintain "Bramblewood Cross," a street situated in the town of Little Compton, as a state road and as part of the state highway system. Your inquiry asks the justices of this court for our opinion in regard to whether this legislation is violative of art. I, sec. 2, of

the Rhode Island Constitution, which provides that all laws are to be made "for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens" and/or art. IV, sec. 14, of the state's constitution, which in essence provides that any legislative proposal calling for the expenditure of public funds for a private purpose must receive an affirmative vote of at least two-thirds of the elected membership in each legislative branch.

Briefs and supporting documentation presented by the amici curiae have been most helpful in presenting the factual background which led to the enactment of the Bramblewood Cross legislation.

Bramblewood Cross is a half-mile connector road that lies between two state highways, Routes 179 and 81, known respectively as Stone Church Road and Crandall Road. Bramblewood Cross was delineated as a street in a subdivision that was approved on October 17, 1968, by the Little Compton Town Council sitting as a planning commission. The town council has consistently refused to accept the responsibility for maintaining the roadway in question as was its right pursuant to G.L. 1956 (1980 Reenactment) § 45–23–10. However, the council has specifically endorsed the legislation now before us.

■ The language of art. I, sec. 2, has been construed to be advisory and not mandatory. It was addressed to the General Assembly by way of advice rather than a command. Thus, art. I, sec. 2, presents no constitutional restraint upon the legislative power of the General Assembly. *Opinion to the Governor*, 88 R.I. 202, 145 A.2d 87 (1958); *Sepe v. Daneker*, 76 R.I. 160, 68 A.2d 101 (1949); *Crafts v. Ray*, 22 R.I. 179, 46 A. 1043 (1900); *In re Dorrance Street*, 4 R.I. 230 (1856).

There is no question that the 1984 legislation passed the Senate by the requisite two-thirds vote mandated by the constitution. It is equally obvious that, in concurring in its passage, the vote of the House of Representatives fell far short of the two-thirds required.

In *Romeo v. Cranston Redevelopment Agency*, 105 R.I. 651, 254 A.2d 426 (1969), a dispute in which the Supreme Court was confronted with a constitutional challenge to an urban-renewal project, there can be found the following extensive discussion relative to the difference between a public purpose and a private purpose:

"An analysis of the various opinions given by our predecessors in 1949 [when the original urban-redevelopment legislation came before the court] reveals that they viewed the phrase 'public use' in what was then the traditional sense, *i.e.*, the prospective use of the property taken from private persons must provide the general public, or an appreciable portion thereof, with the right to use or employ such property or at least have it used or employed by some agency, public or private in the public interest under appropriate regulations and restrictions in order to provide the public as such with some service deemed to be necessary to it or to a proper function of government.

"Today, however, we live in a different age and it is our belief that a public use may not be given a rigid, unbending, absolute definition. * * * As governmental activities and services increased with the growing demands of society, the concept of 'public use' has broadened in proportion thereto. The modern trend of authority is to expand and liberally construe the meaning of 'public use.'" 105 R.I. at 658, 254 A.2d at 431.

■ It is our belief that the addition of Bramblewood Cross to the state highway system passes muster under either the traditional or the modern concept of public purpose. We have no doubt that as a part of the state highway system the prospective use of Bramblewood Cross as a connecting link between Routes 81 and 179 will confer a benefit on the general public as a whole, thus satisfying even the stricter, more traditional definition of public purpose. Again, we would stress that even "if the principal purpose and objective in a

given enactment is public in nature, it does not matter that there will be an incidental benefit to private interests." *In re Advisory Opinion to the Governor*, 113 R.I. 586, 594, 324 A.2d 641, 646 (1974). Consequently, Act 114 of the 1984 Acts and Resolves does not call for the expenditure of public funds for a private purpose since the proposed use is unquestionably a public one.

Accordingly, we find no unconstitutional cloud upon Act 114 of the Rhode Island Acts and Resolves (1984), p. 111.

JOSEPH A. BEVILACQUA
THOMAS F. KELLEHER
JOSEPH R. WEISBERGER
FLORENCE K. MURRAY
DONALD F. SHEA