**CARDI CORPORATION**

v.

**STATE of Rhode Island.**

No. 86–64–Appeal.

Supreme Court of Rhode Island.

April 15, 1987.

John F. Bomster, Christophe C. Whitney, Adler Pollock & Sheehan, Providence, for plaintiff.

Arlene M. Violet, Atty. Gen., Richard B. Woolley, Sp. Asst. Atty. Gen., for defendant.

## OPINION

SHEA, Justice.

This case is before us on appeal from the granting of the plaintiff's motion for partial summary judgment. The Superior Court denied the state's motion to withdraw admissions entered under Rule 36 of the Rules of Civil Procedure for the Superior Court, granted the motion of Cardi Corporation to strike certain denials filed by the state, granted Cardi's motion for partial summary judgment, and denied the state's cross-motion for summary judgment. We affirm.

The events that give rise to this law suit began early in the 1970s. The plaintiff Cardi Corporation (Cardi), a general contractor, is a corporation organized and incorporated under the laws of Rhode Island with its principal place of business in Warwick. The defendant is the State of Rhode Island acting by and through the State of Rhode Island Department of Transportation (DOT). The dispute arises out of several contracts between Cardi and DOT for highway-and bridge-construction projects. Each contract is described by the parties as a massive multimillion dollar federal-aid highway project.

Cardi claimed that as a result of various acts, errors, and omissions committed by DOT with respect to these contracts, it incurred costs and expenses for which it had not been paid. Initially Cardi's only recourse was to submit these claims to DOT. This was done and the claims appear to have languished, neither approved nor denied for years. In the Rhode Island Acts and Resolves of 1980, also designated as 80–H–7574, the General Assembly passed legislation permitting Cardi to bring suit against the state on the basis of these disputed claims. That authorizing act was amended in 1984 to increase the maximum allowable potential recovery by Cardi from $1,250,000 to $3 million; a later amendment authorized a recovery of up to $5 million. The authorizing bill and amendments will be referred to in this opinion as "the legislation."

In 1983, nearly ten years after the work was performed and at the state's suggestion, Cardi agreed to submit the claims to a DOT claims board without prejudice to Cardi's right to litigate. The claims board considered the matter over the next two years and during those hearings DOT witnesses made several acknowledgments of meritorious claims on the part of Cardi. However, in May 1985 the board denied Cardi's claim entirely. At that point Cardi resumed its prosecution of the pending law suit in Superior Court, particularly in the conduct of discovery under the Rules of Civil Procedure including depositions and requests for admissions.

The principal issues before us concern admissions requested by Cardi under Rule 36, the denial of the state's motion for leave to withdraw those admissions, and the grant of Cardi's motion for summary judgment against the state under Rule 56.

Cardi filed requests for admissions under Rule 36 that were objected to by DOT. The objections were considered by the trial court and rejected. The court ordered DOT either to admit or to deny the requests before a specified date, but DOT failed to comply. Thereafter, on more than one occasion DOT filed motions for leave to withdraw the admissions that had resulted from its failure to comply. The court denied those motions. Then, with the factual issues effectively resolved by the admis-

sions under Rule 36, Cardi moved for partial summary judgment under Rule 56, which motion was granted. This appeal followed.

Rule 36 of the Rules of Civil Procedure for the Superior Court provides for requests for admission of facts and of genuineness of documents. In relevant part Rule 36 provides that a party may request admissions about the truth of any fact or the genuineness of any document, which fact or document must have some relation to issues in the case. The truth or genuineness of the fact or the document requested is deemed admitted unless, within ten days, the request is objected to or the party to whom the request is directed files a sworn statement either specifically denying some or all of the requests or setting forth reasons why the requests cannot be truthfully admitted or denied. The answering party may also file written objections on the ground that the requested admissions are privileged or irrelevant or otherwise improper, in whole or in part, together with a notice of hearing on the objections at the earliest possible time.

When Cardi requested the admissions in this case, DOT merely objected without specific reasons and failed to designate a date for hearing on the objections as required by the rule. Because a trial date had by then been set by the trial court, and because Cardi wished to narrow the issues in what both parties describe as a very complicated and involved case arising from events now over ten years old, Cardi itself brought on a hearing on the objection to admissions by filing a motion to compel compliance with Rule 36 and set that motion down for hearing.

After the hearing, the trial justice granted the motion to compel and ruled that DOT's objections were unfounded. The trial court ordered compliance by DOT on or before a certain date. The date for compliance was extended twice at the request of DOT. Each time the request for extension was agreed to by Cardi. The DOT failed to comply within the time of the last extension. It filed its response containing some admissions and numerous denials a day late.

To remove any doubt about the effectiveness of the admissions that resulted from DOT's failure to comply on time, and because the trial date was only four days away, Cardi filed a motion to strike the state's late response. This appears to have been a reasonable step on Cardi's part since the late response, if allowed, would have required Cardi to prove at trial a large number of facts in issue, whereas if the late response was disallowed, most of the factual issues would be resolved by the admissions.

After a hearing, Cardi's motion to strike DOT's late response was granted, thereby binding DOT to the admissions Cardi had requested. Cardi then filed an amended motion for partial summary judgment, which was heard and continued. Later DOT filed a motion to withdraw its admissions, which motion was heard along with Cardi's continued amended motion for partial summary judgment. The DOT's motion to withdraw the admissions was denied, and Cardi's amended motion for partial summary judgment was granted.

On appeal DOT argues that the trial court was in error when it granted Cardi's motion to strike the admissions that came about because of DOT's failure to respond on time.

■ The denial of DOT's motion for leave to withdraw the admissions is the principal issue before us. However, we would first observe that, on the record before us the trial justice did not act arbitrarily, nor did he abuse his discretion when he granted Cardi's motion to strike DOT's late response to the requests for admissions. The subject matter of the requested admissions had been known to and was largely under the control of DOT and was under consideration by the state for more than ten years. The requests themselves were fully known to DOT for more than two and a half years. They were objected to by DOT in a manner not fully in accord with the rules eight months before the trial court's crucial ruling on Cardi's motion to compel compliance in August

1985. The DOT argues that a compliance only one day late, after such a long passage of time, constituted the equivalent of compliance. This argument did not persuade the trial court.

The DOT argues on appeal that the Superior Court lacked any authority to enter an order, after hearing, granting Cardi's motion to compel compliance and striking its objection. This argument is unsupported by any authority of which we are aware. However, since this challenge to the Superior Court's authority was not raised in that court, it will not be heard in this court on appeal. *Scully v. Matarese*, 422 A.2d 740, 741 (R.I.1980).

It is important that we reflect for a moment on the purpose of the rule that allows the request for admissions. Rule 36 establishes a "procedure * * * for facilitating the proof at the trial by weeding out facts and items of proof over which there is no dispute, but which are often difficult and expensive to prove." 4A Moore, *Federal Practice* ¶ 36.02 at 36–12 (1984). If the rule is to fulfill this undisputed function, the admissions provided by the rule must be considered as binding. Otherwise, a party securing an admission could not rely upon its binding effect and thereby safely avoid the expense of preparing to prove the very matter on which he has obtained the admission. The purpose of the rule is thereby defeated. *See General Electric Co. v. Paul Forsell & Son, Inc.*, 121 R.I. 19, 23, 394 A.2d 1101, 1103 (1978); Maine Civil Practice § 36.4 at 534 (1969).

In *General Electric Co.* this court addressed the question of leave to withdraw admissions. It is the only time, before now, that the issue was before the court. The court held that the policy considerations underlying Rule 36 require that an admission entered under the rule must be deemed to be conclusively established and binding on the admitting party. *General Electric Co.*, 121 R.I. at 23, 394 A.2d at 1103. It was also held, however, that "an admission may be withdrawn if the admitting litigant acted diligently; if adherence to the admission must cause a suppression of the truth; and if the withdrawal can be made without prejudice to the party who requested the admission." *Id; see also* Finman, *The Request for Admissions in Federal Civil Procedure*, 71 Yale L.J. 371, 422 (1962).

■ On the record before us we conclude that the trial justice was justified in ruling that DOT failed to establish a right to withdraw the admissions. The attorney for DOT does not argue that it meets the diligence requirement, nor could DOT so argue on this record. It waited nearly three months before it filed the motion to withdraw the admissions. No explanation is offered for its failure to comply with the court's order except for some references to difficulty in getting the admissions prepared for signature. In order to establish diligence, a party must, at minimum, make a showing of what would amount to "excusable neglect." The DOT has failed in this regard. Furthermore DOT never asserted before the trial court that it sought, or that Cardi agreed to, a third extension of time for compliance.

A lack of diligence has characterized DOT's conduct in these entire proceedings. It did not answer the case for a year and a half after suit was commenced, in violation of Rule 12(a) of the Superior Court Rules of Civil Procedure. That answer, when it was filed, came months after the attorney for the state had officially entered his appearance. At one point in 1983 DOT was ordered to pay Cardi's attorney's fees and stenographic expenses within thirty days because of the state's failure to respond to notices of depositions and subpoenas duces tecum. Those payments remain unmade even today. In addition, Cardi began its discovery by noticing the deposition of DOT's chief design engineer, who was served with a subpoena duces tecum requiring the production of certain documents at his deposition. The witness appeared at the appointed time, but counsel did not and the deposition had to be rescheduled. On the new date the witness appeared without the subpoenaed documents explaining only that he had had difficulty locating them. On several occasions, depositions were scheduled by Cardi,

and without attempting to obtain appropriate protective orders under Rules 30(b) and 45(b) of the Superior Court Rules of Civil Procedure, DOT's witness and counsel appeared without the subpoenaed documents. This practice continued right up to a month before the trial date. After the claims board had rejected Cardi's claim entirely and Cardi initiated the final round of discovery of important witnesses, the state continued to fail in responding to subpoenas duces tecum without seeking protective orders from the court.

The second consideration under *General Electric Co.* involves the suppression of truth. The DOT is again in no position to argue. To prevail, DOT would have to point out what facts were actually contrary to the admissions. It has not done so. The justice hearing the motion to withdraw the admissions offered to continue the matter and set aside a time for examination of the depositions and other documents that DOT asserted would contain the truth. The DOT at no time took advantage of the offer and never designated the documents or pages in the depositions on which it would rely. Two weeks after Cardi's motion for partial summary judgment was granted, DOT filed "Appendix of References to Specific Portions of Discovery Materials in Support of State's Objection to Motion for Partial Summary Judgment and State's Motion to Withdraw Admissions." However, DOT failed to move that the trial court reconsider its decision granting summary judgment.

The record tends to establish that the admissions in question were probably more consistent with the truth than otherwise. There were documents disclosed during discovery, such as a DOT departmental interoffice memorandum and also testimony of state officials and engineers during depositions that acknowledged liability of the state on many of the Cardi claims, leaving only questions regarding damages. These acknowledgments of liability occurred many times over the entire period that Cardi has pressed its claims.

With regard to the matter of prejudice, the last test in *General Electric Co.*, it is obvious that DOT is not able to persuade the court that it is entitled to relief. As we have stated, it is likely that the admissions are more consistent with truth than otherwise. Therefore, DOT can show no prejudice because of the admissions themselves, and to permit their withdrawal would force Cardi to produce evidence at a trial to establish the truth of what DOT knows is true. The prejudiced party in this case would be plaintiff Cardi. Our civil rules are opposed to requiring a party to prove what should have been admitted pursuant to a Rule 36 motion. In fact a trial court, under Rule 37(c), is authorized to assess costs against a party who refuses to admit what is later proven to be true at trial. Our civil rules impose an obligation on all parties to litigate only facts that are truly contested. The DOT has not met that obligation.

The DOT next argues that the trial court lacked the authority to grant Cardi's motion for summary judgment. In its brief DOT contends that the trial court "shirked its duty," imposed by the enabling legislation, by allowing Cardi "to weasel around" the requirements imposed upon it by the legislation. The DOT argues that the legislation prescribed that Cardi's claims be adjudicated only through a full trial and not through the summary-judgment procedure under Rule 56. This argument was not presented to the Superior Court; consequently, we are not required to consider it for the first time on appeal. Furthermore, the language of the legislation does not support this argument. The act provides, "The trial shall be conducted as other civil actions are tried in said [The Superior] court." 80–H–7574, 1980 R.I. Acts and Resolves 46. The plain and obvious meaning of the words in the act compels the conclusion that the Rules of Civil Procedure, including Rule 36 and Rule 56, apply.

 When considering a Rule 56 motion for summary judgment, the trial justice must determine by examination of the pleadings, depositions, affidavits, answers to interrogatories, and admissions whether there exists a genuine issue of material fact and, if not, whether the moving party

is entitled to judgment under the applicable law. *Industrial National Bank v. Patriarca,* 502 A.2d 336, 338 (R.I.1985); *Saltzman v. Atlantic Realty Co.,* 434 A.2d 1343, 1344–45 (R.I.1981). The mere recitation of facts sympathetic to one's position will not defeat a motion for summary judgment unless the facts are pertinent to the claim or the defense that is actually being asserted. *See Saltzman,* 434 A.2d at 1345.

Summary judgment is a drastic remedy and should be cautiously applied. Nevertheless, when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law, summary judgment properly issues. *Saltzman,* 434 A.2d at 1345; *Ardente v. Horan,* 117 R.I. 254, 366 A.2d 162 (1976).

It is well settled that a party may obtain a summary judgment in reliance on Rule 36 admissions of the party opposing the summary judgment. *Brook Village North Associates v. General Electric Co.,* 686 F.2d 66, 70 (1st Cir.1982) (courts have not hesitated in appropriate cases to apply the sanction of Rule 36 to material facts that conclusively establish or preclude a party's claim); *Rainbolt v. Johnson,* 669 F.2d 767, 768 (D.C.Cir.1981) ("District Court erred in failing to give binding and conclusive effect to the unanswered requests for admissions"); *United States v. Kenealy,* 646 F.2d 699, 703 (1st Cir.), *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 250 (1981) (court was within its discretion to grant summary judgment against defendants based on matters involuntarily admitted against them).

The DOT next argues that the legislation is unconstitutional because the way in which it was enacted violated article 4, section 14, of the Rhode Island Constitution. The DOT filed a cross-motion for summary judgment based on this contention and the trial court denied the motion.

Article 4, sec. 14 provides that

"[t]he assent of two-thirds of the members elected to each house of the general assembly shall be required to every bill appropriating the public money or property for local or private purposes."

The DOT notes that the Journal of the House of Representatives dated May 8, 1980, shows that the initial enabling legislation was passed by the House on a division vote of sixty-one members voting in the affirmative and four voting in the negative. The house membership is a hundred, of which two-thirds would be sixty-seven. The Journal of the Senate dated May 9, 1980, records that the same legislation was passed in concurrence by the Senate on a roll-call vote of thirty-seven in the affirmative and none in the negative. The Senate membership is fifty, of which two-thirds would be thirty-four. Because the record shows a less-than-two-thirds vote in the House of Representatives, DOT asserts that the enabling legislation is invalid.

Neither in its original answer nor in an amended answer did DOT assert unconstitutionality as an affirmative defense. This was first asserted by the state when the motion for summary judgment was heard.

■ Initially, we would remind counsel of that maxim of constitutional law that states that a Legislature is presumed to act within constitutional limits when it passes legislation, *Atchison, Topeka and Santa Fe R.R. Co. v. Matthews,* 174 U.S. 96, 104, 19 S.Ct. 609, 612, 43 L.Ed. 909, 912–13 (1899); *In re Advisory Opinion to the House of Representatives,* 485 A.2d 550, 552 (R.I.1984), and that a determination in favor of constitutionality will always be made in a doubtful case. *Carr v. Brown,* 20 R.I. 215, 223, 38 A. 9, 11 (1897). Therefore, any duly enacted statute is presumed to be constitutional. To prevail in this case, DOT must overcome this presumption of constitutionality. *Opinion to the Governor,* 89 R.I. 329, 335, 153 A.2d 168, 171–72 (1959). Its burden is to prove unconstitutionality beyond a reasonable doubt. *Santini v. Lyons,* 448 A.2d 124, 126 (R.I. 1982); *State v. Capone,* 115 R.I. 426, 432–33, 347 A.2d 615, 619 (1975); *In re Buxton,* 111 R.I. 480, 483, 304 A.2d 350, 352 (1973).

■ The DOT's argument of unconstitutionality presupposes that the legislation accomplished two objectives: that it actually appropriated public money and that it

intended that money for local or private purposes.[1] The state's argument fails on both counts.

Although the word "appropriated" is used in section 4 of the initial enactment, the bill itself is not an appropriations bill. An appropriation "sets apart from the public revenue a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object and for no other." *Opinion of the Justices to the Governor*, 373 Mass. 911, 914, 370 N.E.2d 1350, 1352 (1977); *see also Fuselier v. State Market Commission*, 238 So.2d 243, 245 (La.App.1970) ("An 'appropriation' is an authorization by the Legislature to draw available money from the State Treasury for a specified purpose").

A comparison of the budgets adopted by the State Legislature each year since the initial enabling legislation was passed confirms, in our opinion, that this legislation was not intended to be, nor is it, an appropriations bill. No line item is included in any state budget to cover Cardi's claim against the state. No special fund was created or set aside to be applied to a judgment for Cardi against the state. The legislation did no more than waive the state's sovereign immunity in favor of Cardi up to a particular amount of money and permitted Cardi to file suit up to the amount specified.

"The test of whether an act is an appropriation is whether the money may be paid or drawn from the state treasury on authority of the act." *State ex rel. Parker v.*

*Youngquist*, 69 S.D. 423, 426, 11 N.W.2d 84, 86 (1943). The legislation before us does not meet that test. Cardi could not recover here unless two events occurred. First, it had to prevail in its lawsuit against the state and reduce its claim to a judgment. Second, under the terms of the legislation, sums had to be available in the state treasury that were not "otherwise appropriated." Until these two events occurred, Cardi could not draw from the state treasury. Since the authority conferred by the legislation was contingent authority, it could not be a true appropriation.

■ The second issue relating to constitutionality concerns whether the legislation is for a local or private purpose. This court said in *Moore v. Langton*, 92 R.I. 141, 153, 167 A.2d 558, 563–64 (1961) that

"Section 14 of art. IV of the state constitution was designed to safeguard the appropriation of public money for local or private purposes, which purposes were not governmental purposes or, if they were, were not for the benefit of the people of the state generally."

This court noted that the concept of "public use" has broadened and "[t]he modern trend of authority was to expand and liberally construe the meaning of 'public use.'" *Romeo v. Cranston Redevelopment Agency*, 105 R.I. 651, 658, 254 A.2d 426, 431 (1969). That expansion of the concept of "public use" has very recently been reaffirmed in *In re Advisory Opinion to the Governor*, 510 A.2d 941, 942 (R.I. 1986). In that opinion we considered a situation in which an act had passed one

---

**1.** The language of the act, 80–H–7574, 1980 R.I. Acts and Resolves 45–47, reads in applicable part:

"Section 1. The State of Rhode Island and Providence Plantations consents to have an action brought against it within one (1) year after the date of the passage of this act by the Cardi Corporation * * * a claim for damages alleged to have been sustained by said corporation arising out of contracts awarded by the department of transportation, and the aforesaid Cardi Corporation is hereby granted permission to institute in the superior court * * action against the State * * *.

"Sec. 2. The trial shall be conducted as other civil actions are tried in said court except that

the said Cardi Corporation shall have no right to trial by jury, and the court shall determine all questions relating to liability and damages in connection with said claim.

"Sec. 3. * * * the court shall award to and render judgment for the said Cardi Corporation against the State of Rhode Island and Providence Plantations in such sum as the court shall find to be just and equitable * * *.

"Sec. 4. * * * There is hereby appropriated and made available out of any money in the treasury not otherwise appropriated, a sum sufficient for the payment of any judgment * * *."

body of the Legislature with the two-thirds vote mandated by the Constitution but the vote in the other chamber fell short, creating a situation like the one before us. The legislation involved had ordered the director of transportation to repair and maintain a road in Little Compton as a state road. The street had been dedicated in a subdivision approved by the Little Compton Town Council sitting as a planning commission. However, the town council had consistently refused to accept the responsibility for maintaining the roadway as was its right under G.L.1956 (1980 Reenactment) § 45–23–10. This court concluded that the addition of the road to the state highway system was acceptable as a public purpose.

"Again we would stress that even 'if the principal purpose and objective in a given enactment is public in nature, it does not matter that there will be an incidental benefit to private interests.' " *In re Advisory Opinion to the Governor*, 510 A.2d at 942–43 (quoting *In re Advisory Opinion to the Governor*, 113 R.I. 586, 594, 324 A.2d 641, 646 (1974)).

We conclude, therefore, that the legislation in question does not violate article 4, section 14, of the Rhode Island Constitution.

For all of these reasons the state's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.