DECISION
This case is before this Court on appeal from a Final Decision and Order issued by the Department of Environmental Management (DEM) holding Gregory and Marion Sullivan[1] liable for an assessment of an administrative penalty in the amount of two thousand one hundred and ten ($2110) dollars. Jurisdiction is pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15.
Facts/Travel
Gregory and Marion Sullivan of 21 Florence Street, Norwood, Massachusetts, were the owners and operators of two multi-unit residential structures located at 23-27 Carver Street in Pawtucket, Rhode Island, specifically referred to as Assessor's Plat 63, Lots 278 and 671. (See Defendant's Memorandum of Law, Exhibit B). The Sullivans purchased the property on April 26, 1986. (See Defendant's Memorandum of Law, Exhibit A at 11). The facility is comprised of two adjacent properties containing two apartment buildings, each of which has four or more residential units. Id. At the time the Sullivans purchased the property, one or more underground storage tanks (USTs) were located thereon and were previously used for the storage of petroleum products. Id. The USTs located on the premises were used to store No. 2 heating oil for the purpose of heating the apartment buildings. Id. The operation of the USTs was discontinued by a prior owner when the buildings' heating systems were converted from oil to natural gas. Id. The Sullivans did not operate the USTs since their purchase of the property. Id. The USTs located on the property were never registered with DEM or closed in accordance with theRegulations for Underground Storage Facilities Used for PetroleumProducts and Hazardous Materials ("UST Regulations"). Consequently, a Notice of Violation and Order (NOV) was issued by DEM on September 18, 1992. Id. The NOV was served on Gregory Sullivan at his legislative offices at the Massachusetts State House in Boston on February 8, 1993. Id. The NOV cited the grounds of the violation, as well as certain findings of fact, and gave notice to the Sullivans of their rights to a hearing (See Defendant's Memorandum of Law, Exhibit B).
A hearing request, signed only by Gregory Sullivan was filed on or about February 17, 1993. Id. At a status conference held on April 2, 1993, the parties agreed to a control date of May 3, 1993 to permit the parties some additional time to attempt to settle the matter by agreement. Id. Since the control date passed without settlement, a prehearing conference was scheduled for September 10, 1993. Id. On or about September 3, 1993, DEM officials filed its prehearing memorandum, along with a Request for Admissions with the Administrative Adjudication Division (AAD) of DEM. Id. The pre-hearing conference was conducted on September 10, 1993, by Hearing Officer Mary F. McMahon. Id. Gregory Sullivan attended the prehearing conference with his father, George Sullivan, a Massachusetts lawyer not licensed in Rhode Island. Marion Sullivan did not appear. Over DEM's objection a control date of October 8, 1993, was established to permit the parties to further negotiate a consent agreement, which was required to be executed and filed with the AAD on or before October 8, 1993. On September 15, 1993, DEM forwarded a proposed consent agreement to the Sullivans for their review and execution, which they failed to do.
On November 16, 1993, DEM filed a motion for summary judgment. The Sullivans did not file an objection. However, as a dispositive motion, the motion was set down for hearing and oral argument sua sponte in accordance with AAD policy. Although the hearing on the motion was originally scheduled for December 7, 1993, it was actually heard on December 21, 1993. At the hearing, Gregory Sullivan appeared and presented the Hearing Officer with a memorandum in response to DEM's motion for summary judgment, a motion to respond late to request for admissions, and responses to the request for admissions, none of which had been executed by Marion Sullivan. Furthermore, the responses to the request for admissions were not sworn under oath.
On April 20, 1994, the property in question was sold at a foreclosure auction to Citizens Bank. (Plaintiff's Memorandum of Law at 3). On April 22, 1994, the hearing officer denied Gregory Sullivan's motion to respond late to request for admissions, thus deeming the statements set forth in DEM's request for admissions as true and accurate. See Defendant's Memorandum of Law, Exhibit C. On April 26, 1994, based upon these admissions the AAD granted partial summary judgment in favor of DEM. See Defendant's Memorandum of Law, Exhibit A. Consequently, since liability was established by the summary judgment, the matter was ordered to hearing on the sole issue of whether the penalty assessed in the NOV was proper.
A second prehearing was held on May 20, 1994 at which Gregory Sullivan appeared with his father-attorney, George Sullivan. It was at this time DEM learned that the Sullivans no longer owned the property at 23-27 Carver Street. (1/9/95 Transcript at 18.) On or about June 16, 1994, DEM issued a Release of Violation.(See Defendant's Memorandum of Law, Exhibit D.) The Release was issued after the underground storage tanks ("USTs") had been removed from the ground in accordance with the UST Regulations. The Release specifically stated that:
 "This discharge shall not be construed as a dismissal, release or waiver of any pending or future legal action against the person(s) responsible for said violations, nor shall this discharge relieve any person of their responsibility to comply with any state, federal or local statute, rule, regulation or ordinance as such may apply to the above-referenced property." Exhibit D. Release of Violation.
Another hearing on the matter was conducted on January 9, 1995, at which Hearing Officer McMahon presided. At the hearing Gregory Sullivan presented a motion to dismiss for error of law, along with a motion to dismiss for want of jurisdiction. The DEM objected to the presentation of these motions on the morning of the hearing. The hearing officer refused to hear argument on the motion to dismiss for error of law determining it was basically a motion to reconsider an order previously entered by the Chief Hearing Officer, Kathleen Lanphear. Consequently, the matter was referred back to the Chief Hearing Officer for review and decision. (1/9/95 Transcript at 10.)
As to Gregory Sullivan's Motion to Dismiss for want of jurisdiction, the hearing officer allowed oral argument from Gregory Sullivan at the hearing but did not require DEM to present oral argument. Instead, the hearing officer allowed DEM to file written objections at the time it filed its post-hearing memorandum. (1/9/95 Transcript at 6.)
On March 24, 1995, Chief Hearing Officer Kathleen Lanphear issued an order denying the motion to dismiss for error of law.See Defendant's Memorandum of Law, Exhibit E. On June 1, 1995, Hearing Officer McMahon issued her recommended Decision and Order, which addressed the motion to dismiss for want of jurisdiction, as well as the agency's final administrative decision. This recommended decision became final on June 15, 1995, when it was signed by the director of DEM without modification. The decision held that "an administrative penalty in the amount of Two Thousand One Hundred Ten ($2110) dollars is not excessive and is reasonable and warranted." Defendant's Memorandum of Law, Exhibit A at 10.
On appeal, plaintiffs argue that the agency's final Decision and Order violates Rhode Island General Laws § 42-17.1-2 (m) and Section 7 (e) of the Rules and Regulations for Assessment ofAdministrative Penalties. In addition, the plaintiffs contend that by failing to allow the Sullivans to withdraw certain admissions, after said admissions were deemed to be facts, the DEM hearing officer abused her discretion, which prejudiced substantial rights of the plaintiff.
Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L. § 42-35-15 (g), which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflict of Interests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, etal. v. Rhode Island Labor Relations Board et al., 650 A.2d 479, 485 (R.I. 1994).
In the instant action, plaintiff contends that the agency's interpretation of the applicable law, which holds him liable for the penalty assessment after the transfer of the property, is arbitrary and inconsistent with the language of the statute and regulation. Plaintiff first argues that DEM's Decision and Order are in violation of R.I.G.L. § 42-17.1-2 (m) and § 7 (e) of the Rules and Regulations for Assessment of AdministrativePenalties because the property which is subject to the NOV was transferred by foreclosure deed to Citizens Bank. The plaintiff asserts that the obligation to pay an administrative penalty in the amount of $2,110 became Citizens' as a result of the foreclosure. To support his assertion plaintiff merely cites the provisions of R.I.G.L. § 42-17.1-2 (m) and § 7 (e) of the penalty regulations.
G.L. § 42-17.1-2 (m) provides in pertinent part:
 " . . . The director shall forward the order or notice to the city or town wherein the subject property is located and the order or notice shall be recorded in the general index by the appropriate records in the city or town wherein the subject property is located. Any subsequent transferee of that property shall be responsible for complying with the requirements of the order or notice. Upon satisfactory completion of the requirements of the order or notice, the director shall provide written notice of the same, which notice shall be similarly eligible for recordation. The original written notice shall be forwarded to the city or town wherein the subject property is located and the notice of satisfactory completion shall be recorded in the general index by the appropriate municipal official in the land evidence records in the city or town wherein the subject property is located . . . ."
Section 7 (e) of the Penalty Regulations provides:
 "Recordation in Land Evidence Records — in accordance with R.I.G.L. § 42-17.1-2 (m), or any other source of statutory authority, the Director may record any order or notice issued pursuant to the Director's authority in the land evidence records of the city or town wherein the subject property is located. Any subsequent transferee of such property shall be responsible for complying with the requirement of said order or notice so recorded."
This Court is mindful that it is a well-recognized doctrine that deference is accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency. Pawtucket Power Associates LimitedPartnership, et al v. City of Pawtucket, et al., 622 A.2d 452, at 456 (R.I. 1993). (Citations omitted.) Furthermore, deference is accorded even when the agency interpretation is not the only permissible interpretation that could be applied. Id. (citing toYoung, 476 U.S. at 981, 106 S.Ct. at 2365, 90 L.Ed. 12d at 967.) In DEM's Decision and Order the hearing officer concluded that neither R.I.G.L. § 42-17.1-2 (m) nor Penalty Regulation § 7 (e) prohibited DEM from releasing the NOV from the land evidence records while proceeding with the administrative action that was already in progress.
In addition, the language of the June 16, 1994 Release specifically states,
 "This discharge shall not be construed as a dismissal, release or waiver of any pending or future legal action against the person(s) responsible for said violations . . . ." Defendant's Exhibit D, Release of Violation.
Accordingly, this Court finds plaintiff's argument that DEM's Decision and Order are in violation of R.I.G.L. § 42-17.1-2
(m) and § 7 (e) of the Rules and Regulations for Assessmentof Administrative Penalties to be without merit.
Plaintiff also argues that the hearing officer abused her discretion by failing to allow the plaintiff to withdraw certain facts that were deemed to be admissions because of the plaintiff's late response to the agency's request for admissions, and as a result, substantial rights of the plaintiff were prejudiced. The purpose of the rule that allows the request for admissions is to facilitate "the proof of the trial by weeding out facts and items of proof over which there is no dispute, but which are often difficult and expensive to prove." Cardi Corp. v.State, 524 A.2d 1092 at 1095 (R.I. 1987) (quoting 4A Moore, Federal Practice ¶ 36.02 at 3c-12 (1984)). Thus, if the rule is to serve its intended purpose, the admissions provided by the rule must be considered as binding. Id.
Furthermore, a review of the record indicates that the plaintiffs had numerous opportunities to file responses to the agency's request for admissions and failed to do so. The evidence of record indicates the hearing officer did not abuse her discretion by not allowing the plaintiff to withdraw certain facts that were deemed to be admitted.
Upon review of the entire record in this matter, this Court finds that the decision of DEM is supported by substantial evidence and was not made upon unlawful procedure or in violation of statutory provisions, or other error of law. Substantial rights of the plaintiff have not been prejudiced. Accordingly, this Court affirms the June 15, 1995 decision of the Department of Environmental Management.
Counsel shall submit the appropriate order for entry.
[1] After reviewing the record this Court finds that Marion Sullivan did not adequately preserve her rights to an administrative appeal according to the Rhode Island General Laws; consequently, she is not a party to this appeal.