## Opinion to the Governor.

### October 10, 1958.

Present: Condon, C.J., Roberts, Andrews, Paolino and Powers, JJ.

REQUEST FOR AN OPINION, submitted by governor to supreme court in accordance with provisions of art. XII, §2 of amendments to constitution, with respect to creation of Rhode Island Industrial Building Authority and powers given to it and constitutionality of certain provisions of chapter 91 of P. L. 1958. Court is of opinion that act is free from constitutional objections raised by request.

October 7, 1958

To His Excellency Dennis J. Roberts
Governor of the State of Rhode Island
and Providence Plantations

We have received from your excellency a request for our written opinion, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, upon certain questions which you propound in your letter as follows:

"Does the enactment of Chapter 91, Public Laws 1958, by a duly recorded two-thirds vote of the legislature and approval by the people of the referendum therein render the bonds and the powers delegated to the Rhode Island Industrial Building Authority free from objection on constitutional grounds and particularly on the following grounds:

1. That, notwithstanding a two-thirds vote adopting the act, the appropriations, proceeds of bond issues and the pledges of the faith and credit of the state therein made and provided for would be for private, as opposed to public, purposes; or

2. That the powers delegated to the Authority are an unlawful delegation of legislative power; or

3. That approval of the referendum therein provided for would not constitute a valid consent of the people to the appropriations, borrowings and pledge of the faith of the state therein made and authorized; or

4. That the act violates Article I, Section 2 of the Constitution of the State of Rhode Island, 'Laws for good of whole — Distribution of burdens of state'?"

After consideration we reply thereto as follows.

1. In our opinion the fact that the act was passed by a duly recorded vote of two thirds of the members elected to each house of the general assembly does not necessarily remove the possibility of attack on *any* constitutional ground but it does foreclose such an attack on the ground that it appropriates "the public money or property for lo-

cal or private purposes" in violation of article IV, sec. 14. And since the act provides that it shall not take effect unless a majority of the qualified electors voting thereon approve the same, it cannot be successfully attacked on the ground that it pledges the faith of the state for the payment of the obligations of others in violation of article of amendment XXXI, section 1. In these respects, therefore, we are of the opinion that the act is constitutional even though the provisions thereof should be deemed to be "for private, as opposed to public, purposes."

2. We have examined the powers vested in the Authority by the act and we do not perceive that any of them is essentially legislative in character. However, it may be argued that the power conferred by public laws 1958, chapter 91, sec. 16, to provide funds for the functioning of the Authority in certain contingencies is an indirect grant of a portion of the legislative power to the Authority. If so, we are nevertheless of the opinion that the grant is so limited and restricted by the terms thereof that it does not constitute a violation of article IV, sec. 2, of the constitution which vests the legislative power in the general assembly.

It is now generally recognized that certain limited portions of the legislative power, if confined in expressly defined channels, may be vested by the general assembly in other bodies which it authorizes to act as its agents or auxiliaries in carrying out its constitutional duties. Numerous instances could be cited in this and other jurisdictions, both federal and state, where such limited authorization has been judicially approved and held not to be in conflict with the well-established principle of law that delegated power cannot be lawfully delegated. But this view is so universally accepted we deem it unnecessary to cite such instances here.

3. The referendum provision in section 1 of the act appears to be in substantial compliance with the implied in-

tendment of article XXXI, section 1, of amendments. The second clause of the first sentence of that section disables the general assembly in *any case* from pledging "the faith of the state for the payment of the obligations of others" unless the express consent of the people is first had and obtained. This consent must of course be an intelligent consent. That is, the people must be clearly informed of the nature and extent of the pledge which the general assembly proposes to authorize. We think the question to be propounded to the people in accordance with the provisions of section 1 of the act is sufficiently informative to meet such requirement and is a substantial compliance with the constitutional prohibition of article XXXI, section 1, of amendments.

4. The final question is: Does the act violate article I, sec. 2? That section provides: "All free governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens." This court at various times has stated that this section is advisory and is not a constitutional restraint upon the legislative power of the general assembly. *In the Matter of Dorrance Street*, 4 R. I. 230; *Sayles* v. *Foley*, 38 R. I. 484; *Sepe* v. *Daneker*, 76 R. I. 160. However, whether the section is advisory or mandatory with reference to the ordinary exercise of the legislative power, in our opinion the question is of no consequence where the proposed legislation is submitted to the people for their approval in accordance with an express provision of the constitution relating specifically to such kind of legislation.

Indeed, even in the matter of ordinary legislation where submission to the people is not constitutionally required, this court has held that article I, sec. 2, did not prohibit the general assembly from granting in certain cases exemption from taxation. *Crafts* v. *Ray*, 22 R. I. 179; *Brown*

*University* v. *Granger,* 19 R. I. 704. Hence whether the act in question here be treated as ordinary or extraordinary in its nature from a constitutional viewpoint, it is our opinion that such act is within the constitutional competency of the general assembly to enact and to submit to the people for their approval. And we are of the further opinion that if it meets with popular approval and becomes law it will not, in the sense intended by the framers of the constitution, represent an unfair distribution of the burdens of the state.

FRANCIS B. CONDON
THOMAS H. ROBERTS
HAROLD A. ANDREWS
THOMAS J. PAOLINO
WILLIAM E. POWERS