## Opinion to the Governor.

### June 30, 1959.

OPINION TO THE GOVERNOR in response to inquiry relative to validity of statute exempting retailers of motor vehicles from duty of collecting sales and use taxes and the effect of sales and use tax provisions on issuance of temporary

certificates of registration of motor vehicles before payment of such taxes.

June 30, 1959

To His Excellency, Christopher Del Sesto
   Governor of the State of Rhode Island
      and Providence Plantations

We have received from Your Excellency a request for our written opinion, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, upon certain questions which you propound in your letter as follows:

"(1) Does the provision in Chapter 97 of the P. L. of 1959 which reads:

'Notwithstanding the provisions of sections 44-18-19, 44-18-22 and 44-18-24, as amended, the sales or use tax on any motor vehicle shall not be added by the retailer to the sale price or charge but shall be paid directly by the purchaser to the tax administrator, or his authorized deputy or agent as in this section provided.',

thus relieving motor vehicle dealers (unlike all retailers generally even including those retailers who sell particular articles or commodities such as boats and trailers which, like motor vehicles, are also required to be registered under state law) from the obligation of adding, collecting and remitting the sales tax on motor vehicles, constitute such preferential or other special treatment of motor vehicle dealers involving the sale of motor vehicles over all retailers, upon whom liability for the tax imposed by Section 44-18-18 on retail sales at the rate of three per cent (3%) of their gross receipts from such sales will continue to fall, that it results in discrimination of such a character so as to render such provision invalid?

"(2) Does a temporary certificate of registration of a motor vehicle authorized by Section 31-4-3 of the General Laws of 1956 constitute an original or transferral registration under the provisions of Chapter 97 of

the P. L. of 1959 so as to require a person prior to the issuance of said temporary certificate to furnish evidence satisfactory to the tax administrator that any tax due under this chapter (Chapter 44-18 of the General Laws, as amended) with reference to such article of commodity has been paid?

"(3) If the answer to the foregoing question is in the affirmative, may the Registry of Motor Vehicles, pursuant to the provisions of Section 31-4-3 of the General Laws of 1956, impose a condition that 'A dealer in motor vehicles purchasing or receiving in trade a vehicle duly registered . . . and selling or trading to the owner of such vehicle another vehicle, for which the number plates would be of the same classification, . . .'

"(a) shall collect the tax from the purchaser, and

"(b) shall transmit the tax forthwith to the tax administrator or his duly authorized agent before issuing a 'temporary certificate of registration of the second vehicle'?

"(4) May the Registry of Motor Vehicles require that a dealer of motor vehicles who is permitted, in the conduct of his business to issue temporary certificates of registration, to file a surety bond with it as a condition precedent to obtaining the privilege of issuing such certificates in view of the language in Section 31-4-3, which states: '. . . Such certificate shall be issued upon a form to be obtained from the Registry *and shall be issued under such conditions as the Registry may impose.'?*"

In compliance with our duty under the constitution, we have the honor to submit our opinion.

Section 2 of article XII of amendments to the state constitution provides: "The judges of the supreme court shall give their written opinion upon any question of law whenever requested by the governor or by either house of the general assembly." It may be helpful to point out that the constitution by its express language imposes a mandatory duty on the *judges* of the supreme court to answer such questions. Section 2 does not impose that duty on the su-

preme court as a judicial department of the state government. As was said in *DiPrete* v. *Vallone,* 70 R. I. 286, at page 289: "It is the province of this court, and exclusively of this court, to settle the law of the state; but it is not and has not been its custom to do so except as an incident to the final and necessary adjudication of a real justiciable controversy before it. Opinions of the justices given under sec. 2 of art. XII of amendments to the state constitution are merely advisory."

We interpret the first question as a request for advice as to whether that portion of public laws 1959, chapter 97, which exempts retailers of motor vehicles from the duty of collecting sales and use taxes, discriminates unconstitutionally against all other retailers required to collect such taxes under the provisions of general laws 1956, §§44-18-19, 44-18-22 and 44-18-24, as amended, in favor of motor vehicle retail dealers. More specifically we interpret the first question to be a request for our advice as to whether the clause in question violates the equal protection clause of the fourteenth amendment to the constitution of the United States and sec. 2 of article I of the constitution of Rhode Island.

We are constrained to answer the first question in the negative. Assuming that the clause in question discriminates in some respect against retailers who are required to collect such taxes and in favor of motor vehicle retail dealers who are exempt from doing so, it does not necessarily follow that such discrimination is unconstitutional. *Opinion to the House of Representatives,* 80 R. I. 281, 286. It is well settled that legislation may in fact be discriminatory without violating constitutional provisions unless such discrimination has no basis in reason.

In *Morey* v. *Doud,* 354 U. S. 457, at page 463, the court states the rules for testing a discrimination as follows:

" '1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of

the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78-79."

The first question relates not to a proposed statute but to one which has been enacted by the legislature and signed by Your Excellency. In such circumstances the presumption is that the act is constitutional. Until a question of its constitutionality is specifically raised in a litigated case a duly enacted statute is the law of the state binding upon all.

In *Atchison, Topeka & Santa Fe R.R.* v. *Matthews*, 174 U. S. 96, at page 104, the supreme court stated the rule as follows: "It is also a maxim of constitutional law that a legislature is presumed to have acted within constitutional limits, upon full knowledge of the facts, and with the purpose of promoting the interests of the people as a whole, and courts will not lightly hold that an act duly passed by the legislature was one in the enactment of which it has transcended its power."

This rule has been consistently followed by the supreme court of this state. In *State* v. *District of Narragansett*, 16 R. I. 424, at page 440, the court stated: "The rule generally laid down is, that statutes should be sustained unless their unconstitutionality is clear beyond a reasonable doubt. A reasonable doubt is to be resolved in favor of the legislative action, and the act sustained."

From our research we are convinced that the overwhelming weight of authority holds that such a statute, unlike a pending legislative bill, is presumed to be valid and will not be declared invalid as violative of some provision of the constitution unless such provision is specifically pointed out and the court is convinced beyond a reasonable doubt of the statute's repugnancy thereto, or unless the statute is clearly invalid on its face.

We are aware of no provision in either the state or federal constitution which forbids classification in regulatory legislation. Classification is a necessary adjunct of regulatory legislation and if reasonable violates no constitutional mandate. However, a statute which on its face is valid may be unconstitutional as applied to particular persons or situations, but such a holding can only be made in a litigated case.

For this reason the judges of this court are ordinarily reluctant to express an opinion on the constitutionality of a statute as distinguished from a proposed act in response to executive or legislative requests under sec. 2 of article XII of amendments to the state constitution. In recent years it has been done in a number of instances where it appeared of pressing, practical necessity because the issuance of bonds or some other form of public debt was involved. See *Opinion to the Governor*, 88 R. I. 202, 145 A.2d 87; *Id.*, 75 R. I. 54; *Id.*, 62 R. I. 145; *Id.*, 58 R. I. 486.

Many years ago, however, an opinion was requested by the governor as to the constitutional validity of the so-called "Ten Hour Law" for street car operators and the propriety of the request does not appear to have been considered. *Opinion to the Governor*, 24 R. I. 603. And in 1854 not long after the state constitution was adopted the general assembly made a similar request as to the validity of an act annulling the judgment against Thomas W. Dorr and such request was willingly complied with by the judges. See *Opinion to the Senate and House of Representatives*,

3 R. I. 299. But in that instance it appeared that the general assembly was seeking guidance in its future actions on like matters, since both before and after the adoption of the state constitution they had customarily passed upon a variety of matters of a purely judicial nature. The judges expressed the opinion that the general assembly had no power to pass such an act and that it was therefore unconstitutional. Dorr had previously been released from prison and restored to all his civil rights. Since the opinion was not the judgment of the court rendered in a justiciable controversy it did not have the effect of actually invalidating the act in question.

Our answer to the second question is also in the negative. It is our opinion that the temporary certificate of registration provided for in §31-4-3 is not an original or transferal registration within the meaning of chap. 97. The statute providing for the issuance of temporary certificates of registration was first enacted by the legislature by P. L. 1935, chap. 2213. The sales and use tax act became law by virtue of P. L. 1947, chap. 1887. The two statutes are not dependent upon each other. The whole purpose of the temporary certificate of registration statute would be lost if the temporary certificate of registration provided for in §31-4-3 were to be construed as constituting an original or transferal registration within the meaning of the provisions of chap. 97.

It is our opinion that the *temporary certificate* referred to in §31-4-3 is a *temporary transferal certificate* of registration, not an original or transferal registration within the meaning of chap. 97 or subject to the mandates of the provisions thereof. In enacting the temporary certificate of registration statute the legislature intended merely to legalize the operation of motor vehicles on the public highways for a limited time so as to give one who had traded in a registered motor vehicle an opportunity to transfer

the registration to a newly-acquired motor vehicle for which the number plates would be of the same classification.

We have found no language in chap. 97 which either expressly or impliedly repeals or otherwise modifies the provisions of §31-4-3. It necessarily follows that motor vehicle dealers may issue such temporary certificates of registration within the limitations of the provisions of §31-4-3 notwithstanding the enactment of chap. 97. In enacting chap. 97 the legislature clearly intended to exempt motor vehicle retailers from the requirements of the sales and use tax act which obligated them to collect sales and use taxes and transmit the same to the tax administrator or his duly authorized deputy or agent. It also intended to no longer permit such retailers to act as authorized collectors of sales and use taxes on behalf of the state.

It is equally clear that the legislature intended by that chapter to charge the purchaser of a motor vehicle with the duty of paying such tax directly "to the tax administrator, or his authorized deputy or agent." The purchaser may pay the tax personally or by any agent appointed by him to do so, but liability for such payment will remain on the purchaser until the payment has been received by the tax administrator, and he, the purchaser, cannot obtain the transferal registration provided for in chapter 97 as distinguished from the temporary certificate until such tax has been so paid. And to be legally entitled to operate his motor vehicle after the expiration date of such temporary certificate he must have paid such tax.

In view of our answer to the second question we do not deem it necessary to answer the third question.

In view of our answers to the first and second questions we are of the opinion that it is not necessary for us to consider the fourth question. Since under our answer to the first question the dealer in motor vehicles will no longer be an authorized agent of the state to collect the sales tax,

it would seem that there would be no occasion for the registry of motor vehicles to require such dealer to file a bond with surety.

FRANCIS B. CONDON
THOMAS H. ROBERTS
THOMAS J. PAOLINO
WILLIAM E. POWERS
G. FREDERICK FROST