**James E. SEIBERT d.b.a. Seibert Farms**

v.

**R. Gary CLARK, Tax Administrator.**

**No. 90–518–M.P.**

Supreme Court of Rhode Island.

Feb. 5, 1993.

John Williams, Jeffrey King, Lori Caron Silveira, Robert Fine, Licht & Semonoff, Providence, for plaintiff.

Bernard Lemos, Marcia McGair Ippolito, Div. of Taxation, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the plaintiff's petition for the issuance of a writ of certiorari to review the dismissal of a law suit in the Sixth Division of the District Court of Rhode Island. The plaintiff, James Seibert d.b.a. Seibert Farms (Seibert), brought suit against R. Gary Clark, Rhode Island Tax Administrator (tax administrator), challenging the constitutionality of the decal-fee requirement under the Fuel Use Reporting Law. For the reasons set forth below we deny plaintiff's petition.

The parties stipulated to and submitted an agreed statement of facts for the District Court to consider. We summarize the relevant facts from that stipulation and rely on other facts in the record in our analysis.

Seibert was an unincorporated motor carrier with his principal place of business in Story City, Iowa, during the calendar years 1985 and 1986. The defendant tax administrator administers and enforces the Fuel Use Reporting Law imposed upon motor carriers pursuant to G.L.1956 (1982 Reenactment) chapter 36.1 of title 31. At issue is the constitutionality of the decal-fee requirement for nonresident motor carriers under the Fuel Use Reporting Law as it existed between 1982 and 1987.[1] Seibert

---

1. Prior to 1982 the statute required all motor carriers, whether registered in Rhode Island or not, to obtain a fuel-use license to operate in Rhode Island, to obtain and display fuel decals on each vehicle, and to pay the attendant fees of $10 per decal. In 1982 an exemption to the requirements was adopted for vehicles registered in Rhode Island. In 1987 the exemption for resident motor carriers was removed, and all motor carriers became subject to the decal fee.

was a "motor carrier" within Rhode Island as statutorily defined in the Fuel Use Reporting Law because he operated or caused to be operated a single "covered motor vehicle."[2] The Fuel Use Reporting Law imposes certain requirements upon motor carriers who wish to travel on Rhode Island's highways. All motor carriers operating within Rhode Island are required to obtain a motor-carrier fuel license (motor-carrier license) from the tax administrator. Section 31–36.1–3, as amended by P.L.1987, ch. 118, art. 18, § 1. Pursuant to § 31–36.1–6, all motor carriers operating within Rhode Island are also required to file a surety bond with the tax administrator as a precondition to obtaining their motor-carrier licenses. In addition all motor carriers operating within Rhode Island are annually required to obtain identification devices, that is, fuel decals, which are affixed to each motor vehicle they operate in Rhode Island so as to demonstrate compliance with the licensing and bonding requirements of the Fuel Use Reporting Law. The annual fee for each fuel decal is $10. Section 31–36.1–3.

On April 25, 1985, Seibert applied to the Rhode Island Division of Taxation (tax division) for a motor-carrier license and one 1985 fuel decal. The tax division issued Seibert motor-carrier license number 159419. Seibert filed a cash bond and paid the tax division a total sum of $30.40 on April 30, 1985. Of this $30.40 payment, $10 was attributable to his 1985 fuel-decal fee. Similarly, on October 10, 1985, Seibert made an application for one 1986 fuel decal and paid the tax division $10 on October 15, 1985.

Seibert, through his attorneys, directed a letter to the tax administrator on January 24, 1986, seeking declaratory relief, injunctive relief, and a $20 refund for the decal fees that he paid in 1985 and 1986. He also made a claim for refund "on behalf of all similarly situated motor carriers with respect to fuel decal fees paid by them." The tax administrator responded to Sei-

bert's demands in a letter denying Seibert's individual-refund claims and treating Seibert's letter as a request for an administrative hearing. The tax administrator expressly declined to address the refund claims Seibert made on behalf of other motor carriers because there are no provisions for class-action administrative proceedings.

An administrative hearing convened at the tax division, pursuant to G.L.1956 (1988 Reenactment) chapter 35 of title 44. Both parties appeared through counsel. The adjudicative hearing officer recommended that plaintiff's refund claims be denied. The tax administrator adopted and incorporated this recommendation in his final decision and order. Notice of the tax administrator's denial was forwarded to plaintiff and his attorney. Seibert then sought a de novo judicial review in the District Court.

### I

As a preliminary issue we address defendant tax administrator's argument that plaintiff's claims are moot. The tax administrator relies on the amendment to § 31–36.1–3 in 1987, which removed the controversial language exempting vehicles registered in Rhode Island from paying the decal fee to suggest that there is no longer a controversy. The result of this amendment of the statute is that all motor carriers, whether nonresident or resident, are now required to pay the decal fee.

■ Contrary to defendant's argument, the amendment does not render this case moot. A case is moot if it raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy. *See De-Funis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). To support his position, defendant cites our decision in the related case *Owner–Operators Independent Drivers Association of America*

---

**2.** Pursuant to G.L.1956 (1982 Reenactment) § 31–36.1–2(c), as amended by P.L.1982, ch. 307, § 1, a motor carrier is statutorily defined as "every person, association of persons, firm or corporation, wherever resident or located, who operates or causes to be operated covered motor vehicles on the public highways of this state."

*v. State*, 541 A.2d 69, 71 (R.I.1988), where we stated: "the plaintiffs challenge the constitutionality of § 31–36.1–3 * * *. [T]he language in the statute excepting vehicles registered in Rhode Island has been excised, thus rendering the underlying claim moot." However, the underlying claim in *Owner–Operators* was a claim for injunctive relief. The only issue mooted by the amended statute in the present case was the prospective relief that plaintiff had initially demanded. A live justiciable controversy remains in Seibert's claim for a refund. Where injunctive relief is moot, a claim for damages can keep the controversy breathing. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984); *University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Bowen v. Hackett*, 361 F.Supp. 854 (D.R.I.1973).

## II

The District Court properly dismissed the class-action aspect of this case. In reaching this conclusion, the judge relied on the fact that Seibert was acting as an individual. There is no indication that a class ever existed. Seibert was the only taxpayer who challenged the tax and sought a refund. No other taxpayer sought a refund at any time.

■ The purpose of class actions has been to avoid a multiplicity of suits and to promote judicial economy. "Class actions have been awarded judicial recognition in this jurisdiction where the interested parties to a suit are numerous." *Johnston Businessmen's Association v. aaRussillo*, 108 R.I. 257, 259, 274 A.2d 433, 435 (1971). What distinguishes the present case from a case in which there is a need for a class action is that Seibert is the only aggrieved party seeking relief. We do not face the risk of a multiplicity of suits in this case because no other individuals have come forward at any time seeking relief during the existence of the decal-fee-requirement exemption or after it was repealed. The record indicates that the only other claims for refunds have come from truckers who ordered too many decals by mistake. Those truckers were given a reasonable and adequate mechanism by the tax administrator to obtain such refunds within a sixty-day period.

■ Both parties made arguments regarding the jurisdiction of the District Court even to hear class actions. In addition they raised the issue of the need for each individual plaintiff to exhaust the administrative remedies available before proceeding as a class in District Court if jurisdiction were to be found. The tax administrator correctly points out that we specifically set forth the required statutory procedure for administrative and judicial review of fuel decal refund claims in *Owner–Operators*, when we said:

"The appropriate route for challenging the actions of an administrative authority, in this case that of the tax administrator, is delineated in chapter 36 of title 42, the Administrative Procedures Act. * * * A plaintiff is required to commence a proceeding against the tax administrator for tax refunds, including any additional relief requested. The tax administrator is then required to review the complaint and render a decision. This is the sequence of action mandated by statute." 541 A.2d at 72.

Statutes prescribing the time and the procedure to be followed by a litigant attempting to secure appellate review are to be strictly construed. *Potter v. Chettle*, 574 A.2d 1232, 1234 (R.I.1990).

Following a review under these statutory procedures by the tax administrator, an aggrieved plaintiff is entitled to a de novo review of the tax administrator's findings in the District Court pursuant to G.L.1956 (1985 Reenactment) § 8–8–24. There is no specific provision in the administrative procedures outlined that allows a class action. Instead each taxpayer is required to pursue his remedy individually with the tax administrator. In this case, where only Seibert has exhausted his administrative remedies, proceeding as a class to the District Court was not an option.

We caution, however, that our conclusion is based on the facts of this case alone, and that we are not prohibiting a class action in the District Court in all cases where taxpayers are seeking relief. This case turns on the simple fact that there is no class seeking relief, only Seibert. The absence of a specific rule permitting class actions in District Court does not prohibit them in all cases. By way of comparison, the adoption of Rule 23 of the Superior Court Rules of Civil Procedure in 1966 did not create the first availability of class actions in the Superior Court of Rhode Island. Long before the adoption of the Superior Court Rules of Civil Procedure, taxpayers were permitted to maintain a class action by filing a bill in equity that questioned the validity of the whole tax and its assessment on every person taxed. *Johnston Businessmen's Association v. aaRussillo*, 108 R.I. 257, 274 A.2d 433 (1971). "[E]quity shall take jurisdiction of suits brought by one or more taxpayers who are suing in their own behalf and in behalf of all other taxpayers." *Id.* at 259, 274 A.2d at 435 (citing *McTwiggan v. Hunter*, 18 R.I. 776, 30 A. 962 (1895); *Sherman v. Benford*, 10 R.I. 559 (1873)). The effect of the statutory scheme set forth in § 8–8–24 was to give the District Court exclusive jurisdiction over the review of decisions of the tax administrator. *Owner–Operators*, 541 A.2d at 73 (citing J. Weisberger, *Rhode Island Appellate Practice* 140 (1985)). This exclusive jurisdiction delegates the power to decide all claims for relief attached to the underlying matter. If one assumes that the exclusive power over tax actions allocated by the Legislature to the District Court must include equity jurisdiction, a class action may be a proper vehicle for simplifying a taxpayers' dispute. We need not answer that question of jurisdiction at this time since Seibert is acting alone in his quest for a refund. We affirm the District Court's dismissal of the class-action aspect of the case and proceed with Seibert's refund claims as an individual plaintiff.

### III

The plaintiff's claim under 42 U.S.C. § 1983 for civil-rights violations cannot be maintained. We agree with the District Court's dismissal of the issue but for different reasons. The District Court relied on decisions in Maine, New Hampshire, and New Jersey which precluded § 1983 actions for violations of the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3. *Private Truck Council of America, Inc. v. Secretary of State*, 503 A.2d 214 (Me.), *cert. denied*, 476 U.S. 1129, 106 S.Ct. 1997, 90 L.Ed.2d 677 (1986); *Private Truck Council of America, Inc. v. State of New Hampshire*, 128 N.H. 466, 517 A.2d 1150 (1986); *Private Truck Council v. State*, 221 N.J.Super. 89, 534 A.2d 13 (1987). Subsequent to the District Court Judge's decision in this case, the line of authority on which she relied was overturned by the United States Supreme Court. In *Dennis v. Higgins*, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991), the United States Supreme Court expressly held that a Commerce Clause violation is actionable under 42 U.S.C. § 1983. *Dennis*, however, does not save plaintiff's § 1983 action. It is well settled that an action under § 1983 will not lie against the state or state officials acting within their official capacities, because the state is not a "person" within the meaning of that statute's provisions. *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *Accord Jones v. State of Rhode Island*, 724 F.Supp. 25 (D.R.I.1989).

It is clear from plaintiff's pleadings and arguments that the plaintiff has brought suit against the tax administrator acting within the official duties of his office. The tax administrator does not act in a voluntary and personal capacity in the administration and enforcement of the Fuel Use Reporting Law. While the District Court's dismissal of the civil-rights claim was based on case law that has since been overturned, the decision was correct, nevertheless, and will be affirmed. *In re Joseph J.*, 465 A.2d 150, 152 (R.I.1983); *Souza v. O'Hara*, 121 R.I. 88, 90, 395 A.2d 1060, 1061 (1978); *Bric's Market, Inc. v. State*, 105 R.I. 572, 577, 253 A.2d 590, 592 (1969).

## IV

We now move on to the question before us regarding the constitutionality of the decal-fee requirement for nonresident motor carriers.

When faced with a constitutional challenge of a particular statute, we must begin with the "maxim of constitutional law that states that a Legislature is presumed to act within constitutional limits when it passes legislation." *Cardi Corp. v. State,* 524 A.2d 1092, 1097 (R.I.1987) (citing *Atchison, Topeka and Santa Fe R.R. Co. v. Matthews,* 174 U.S. 96, 104, 19 S.Ct. 609, 612, 43 L.Ed. 909, 912–13 (1899); *In re Advisory Opinion to the House of Representatives,* 485 A.2d 550, 552 (R.I.1984)). In order for Seibert to succeed in his challenge of the fuel-decal-fee statute, he must overcome this presumption of constitutionality. 524 A.2d at 1097 (citing *Opinion to the Governor,* 89 R.I. 329, 335, 153 A.2d 168, 171–72 (1959)). The burden falls on Seibert to prove that the decal fee was unconstitutional beyond a reasonable doubt. 524 A.2d at 1097 (citing *Santini v. Lyons,* 448 A.2d 124, 126 (R.I.1982); *State v. Capone,* 115 R.I. 426, 432–33, 347 A.2d 615, 619 (1975); *In re Buxton,* 111 R.I. 480, 483, 304 A.2d 350, 352 (1973)). He failed to sustain this burden and is not entitled to a refund for the two years that he paid the fee.

We begin first with plaintiff's allegations that the decal-fee requirement was violative of the Commerce Clause. After wading through what Mr. Justice Stevens has referred to as "a 'quagmire' of judicial responses to specific state tax measures," we have concluded that there is no violation under the Commerce Clause. *American Trucking Associations, Inc. v. Scheiner,* 483 U.S. 266, 280, 107 S.Ct. 2829, 2838, 97 L.Ed.2d 226, 241 (1987) (citing *Northwestern State's Portland Cement Co. v. Minnesota,* 358 U.S. 450, 457–58, 79 S.Ct. 357, 361–62, 3 L.Ed.2d 421, 426–27 (1959)).

The United States Supreme Court articulated a four part test for determining the validity of a state tax or fee under the Commerce Clause in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).[3] In order for a tax or fee to survive a challenge under the Commerce Clause, it (1) must apply to an activity with a substantial nexus with the taxing state, (2) must be fairly apportioned, (3) may not be discriminatory, and (4) must be fairly related to the services provided by the state. *Id.* at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331.

The first part of the test, the requirement of a substantial nexus to the taxing state, has been met without question. Nexus requires "some definite link, some minimum connection between [the] state and the person, property or transaction it seeks to tax." *Miller Brothers Co. v. Maryland,* 347 U.S. 340, 344–45, 74 S.Ct. 535, 539, 98 L.Ed. 744, 748 (1954). Continuous physical presence of the taxpayer within the jurisdiction always establishes a sufficient taxable nexus. *National Geographic Society v. California Board of Equalization,* 430 U.S. 551, 562, 97 S.Ct. 1386, 1393, 51 L.Ed.2d 631, 641 (1977). The continuous-physical-presence requirement is relaxed in situations in which transportation equipment is used to move goods and people from state to state where the equipment makes regular appearances in any state. *Braniff Airways, Inc. v. Nebraska State Bd. of Equalization and Assessment,* 347 U.S. 590, 601, 74 S.Ct. 757, 764, 98 L.Ed. 967, 977 (1954). A taxable situs may be found in any state that the equipment makes regular appearances even when these appearances are transitory. *Id.* In the present case we do not have the continuous physical presence of Seibert in Rhode Island, but his transportation of goods on Rhode Island highways satisfies this nexus requirement.

Although plaintiff relies most heavily on his argument that the decal fee fails the third part of the *Complete Auto Transit* test, he does mention the second and fourth parts as well. We find no indication that the tax is not fairly apportioned as required

---

3. This court has previously applied this test in its analysis of tax claims under the Commerce Clause. *Commercial Credit Consumer Services, Inc. v. Norberg,* 518 A.2d 1336, 1337 (R.I.1986).

by the second part. The burden of purchasing a $10 decal fee for identification purposes only does not impose a heavier burden on nonresident motor carriers. Resident motor carriers fulfill the same need to provide vehicle identification by registering their vehicles and attaching the required license plates. The decal-fee statute is not duplicative in that it only requires one decal per taxable period. The tax administrator notes that there are no multiple levies or "trip fees" under the requirements as there are in many other jurisdictions.

We also adopt the tax administrator's analysis of the fourth part of the test and find no viable argument that the decal fee fails here either. The statutory language that the Legislature chose sets forth the allowed purpose of the Fuel Use Reporting Law as "to assure the payment of tax on fuel consumed by motor carriers in propelling motor vehicles on the public highways in Rhode Island." Section 31–36.1–1. Using state tax dollars, obtained from allocations of the General Fund, the state maintains and repairs the public highways and bridges of Rhode Island. These very same highways and bridges are used extensively by both nonresident and resident motor carriers to earn their livelihood. The sole purpose of the decal-fee requirement is to provide local law-enforcement officials and the tax administrator a means of identifying nonresident motor carriers on our highways and to assure compliance with the Fuel Use Reporting Law.

We must reemphasize that the taxation scheme under the Fuel Use Reporting Law is not itself being challenged. Seibert specifically challenges only the annual $10 decal fee that he was required to purchase as an identification device. The decal, when conspicuously displayed by nonresident motor carriers on their vehicles, is used only as evidence of compliance with the taxation scheme under the Fuel Use Reporting Law. The subsequent taxes by the motor carrier on the "use of fuel for the propulsion of covered motor vehicles on the public highways within this state" are paid either at the time of purchase of fuel if purchased in state, or on a quarterly basis when pur-

chased elsewhere. Section 31–36.1–5, as amended by P.L.1986, ch. 427, § 1. The decal-fee requirement assists in the administration of this taxation scheme and is fairly related to the services provided by Rhode Island in maintaining and repairing these highways. The tax administrator argues that the fuel decal and its attendant fee bear a rational relationship to an articulated and legitimate government purpose within this statutory scheme: the identification of nonresident motor carriers and the maintenance of registration records pertaining to those carriers. These same goals are accomplished with regard to Rhode Island motor carriers but through a different and comparable statutory scheme.

■■■ The third part of the *Complete Auto Transit* test is the one on which Seibert makes his most strenuous argument. He argues that under this element the United States Supreme Court has required resident and nonresident taxpayers to be treated equally. However, the prohibition against discrimination of interstate commerce does not necessarily require all parties be treated exactly the same way. Instead, what is prohibited is per se discrimination against nonresident carriers or market participants. A state is forbidden from imposing a heavier tax burden upon out-of-state businesses engaging in interstate commerce than the tax burden imposed upon resident businesses. *Scheiner*, 483 U.S. at 280–81, 107 S.Ct. at 2838–39, 97 L.Ed.2d at 240–41.

Seibert argues that the fee is facially unconstitutional. The fact that Seibert was required to pay the $10 fee for two years simply because he was an out-of-state motor carrier does not, on its face, make the fee requirement unconstitutional. Interstate commerce may be constitutionally required to pay its way. *Complete Auto Transit, Inc.*, 430 U.S. at 287, 97 S.Ct. at 1083, 51 L.Ed.2d at 336. Again we remind plaintiff that the disputed fees were charged for a visual-identification device that when displayed, indicates compliance with the Fuel Use Reporting Law. The decal placed conspicuously on the non-resident motor carrier was the only means of

identifying which nonresident motor carriers are in compliance. Resident motor carriers were subject to comparable identification requirements by complying with the annual registration requirements. General Laws 1956 (1982 Reenactment) §§ 31–3–2 and 31–3–33. The visual-identification device used by resident motor carriers was the registration plate that was required to be displayed prominently in a specified manner. Section 31–3–18, as amended by P.L.1987, ch. 165, § 1.

The registration process set forth by statute provided an adequate means for local law-enforcement officials and the tax administrator to identify and trace resident motor carriers. The registration fees collected provided a mechanism for the state to issue identification devices (plates), issue registration documentation and maintain registration records. Sections 31–6–1(B), 31–3–7, and 31–3–8. Here, the state imposed similar financial burdens on both resident and nonresident motor carriers but employed two different statutory schemes to effectuate these burdens. Rhode Island was not burdening Seibert more heavily when he crossed the state line than it burdened Rhode Island motor carriers. *Armco, Inc. v. Hardesty,* 467 U.S. 638, 642, 104 S.Ct. 2620, 2622, 81 L.Ed.2d 540, 545 (1984).

The plaintiff relies heavily on the United States Supreme Court decision in *Scheiner* to establish that the decal fee is violative of the Commerce Clause. The *Scheiner* decision dealt with two different flat taxes in Pennsylvania. One was a $25 "marker fee" that was collected only from out-of-state truckers. The other was an axle tax that was imposed on all truckers both instate and out of state, based on vehicle-weight classes. Seibert analogizes the Rhode Island decal fee with the $25 marker fee in Pennsylvania and formulates his argument under this comparison. However, the marker fee in *Scheiner* is factually distinguishable from the decal fee that Seibert is challenging. A proper reading of *Scheiner* reveals this distinction and compels us to conclude that the decal fee as it existed between 1982 and 1987 should be upheld.

The District Court carefully interpreted the *Scheiner* decision. In that case the Supreme Court looked at both of the Pennsylvania taxes challenged and found them violative of the Commerce Clause. Pennsylvania required an identification marker for every truck over a certain weight. Nonresident motor carriers were required to purchase a marker. The fee for the marker was raised from $2 to $25 in 1980 and allowed an exemption for vehicles registered in Pennsylvania. The parties stipulated that the administrative costs of issuing the identification markers was approximately $5. In 1982 the marker fee was reduced from $25 to $5 per vehicle, and the disputed axle tax was enacted. The axle tax required an annual fee of $36 per vehicle axle on certain trucks whether registered in Pennsylvania or elsewhere. Ironically the same statute reduced registration fees for Pennsylvania trucks by an amount comparable to the axle tax, offsetting the new tax.

The Supreme Court in *Scheiner* rejected the "somewhat metaphysical approach to the Commerce Clause" in favor of a study of the practical consequences of the tax. *Scheiner,* 483 U.S. at 294–95, 107 S.Ct. at 2846, 97 L.Ed.2d at 250. The Court found that the Pennsylvania flat taxes "discriminate against out-of-state vehicles by subjecting them to a much higher charge per mile traveled in the State, and they do not even purport to approximate fairly the cost or value of the use of Pennsylvania's roads." *Id.* at 290, 107 S.Ct. at 2844, 97 L.Ed.2d at 247. Seibert clings very tightly to the determination that both of the Pennsylvania taxes were unconstitutional. What he fails to do, however, is to interpret correctly how the Court arrived at these separate determinations.

In its analysis the Supreme Court applied an "internal consistency" test. In order for a flat tax to pass this test and survive a constitutional challenge, the tax must be such that "if applied by every jurisdiction, there would be no impermissible interference with free trade." *Id.* at 284, 107 S.Ct. at 2840, 97 L.Ed.2d at 243 (quoting *Armco, Inc. v. Hardesty,* 467 U.S. at 644, 104 S.Ct. at 2623, 81 L.Ed.2d at 546). What Seibert

has selectively overlooked in his reliance on *Scheiner* is that the Supreme Court did *not* forbid the use of flat taxes by states. Rather it stated that "the Commerce Clause does not require the States to avoid flat taxes when they are the only practicable means of collecting revenues from users and the use of a more finely gradated user-fee schedule would pose genuine administrative burdens." 483 U.S. at 296, 107 S.Ct. at 2847, 97 L.Ed.2d at 251.

The District Court noted that the marker fee in *Scheiner* can not be compared to the Rhode Island decal fee. From 1980 to 1982 the marker fee at $25 was five times the administrative costs of $5 per vehicle. The cost for nonresident truckers was excessive. The adjustment of the fee after 1982 clearly attempted to release Pennsylvania registrants from the tax burden. The Commerce Clause has long forbidden a tax that favors in-state business over out-of-state business for no other reason than the location of its business. *Id.* at 286, 107 S.Ct. at 2841, 97 L.Ed.2d at 244 (citing *Tyler Pipe Industries, Inc. v. Washington Dept. of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987)). The Court struck down the $25 marker fee because its effect was to impose a cost on out-of-state truckers that was five times that of resident truckers.

The case before us requires a different result. There was no showing by plaintiff, who bears this burden beyond a reasonable doubt, that the $10 decal fee forced nonresident motor carriers to bear a higher cost than resident motor carriers. There was no stipulation, as found in *Scheiner*, concerning what the administrative costs per vehicle were for issuing and maintaining the decal-fee requirement scheme. In light of the failure of plaintiff to present such evidence, we cannot arbitrarily determine that the mere $10-per-vehicle fee is excessive and presents an unfair burden on interstate commerce. Nor has there been any factual showing of a discriminatory impact by Seibert. Seibert has rested primarily on the existence of the statute itself and the decision in *Scheiner* as a means to entitle him to a refund. No evidence was put forth by him that in the slightest degree met his burden. If, as Seibert argues, the Rhode Island decal fee is to be equated with the $25 marker fee in *Scheiner*, it was incumbent upon him to demonstrate that the Rhode Island decal fee either grossly exceeded the reasonable cost of administering the Fuel Use Reporting Law or that it imposed a disproportionate financial burden upon nonresident motor carriers.

It is important to note that the *Scheiner* Court was silent on the existence of the $5 marker fee for nonresident carriers after 1982, which approximated the administrative costs of issuing the markers. What troubled the Court was the excessive fee of $25 as it existed between 1980 and 1982. The Court expressly stated that certain flat fees may be appropriate when it said that "a State may impose a flat fee for the privilege of using its roads without regard to the actual use by particular vehicles, so long as the fee is not excessive." 483 U.S. at 289, 107 S.Ct. at 2843, 97 L.Ed.2d at 246. Contrary to Seibert's claim regarding the Rhode Island decal fee, the plaintiffs in *Scheiner* demonstrated that the marker fee and the axle tax in effect imposed a disproportionate burden upon nonresident carriers. The Court referred to its previous decision in *Evansville–Vanderburgh Airport Authority District v. Delta Airlines, Inc.*, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972), to explain that flat fees are permissible

> "[a]t least so long as the toll is based on some fair approximation of use or privilege for use * * * and is neither discriminatory against interstate commerce no excessive in comparison with the governmental benefit conferred, it will pass constitutional muster, even though some other formula might reflect more exactly the relative use of state facilities by individual users." *Scheiner*, 483 U.S. at 289–90, 107 S. Ct. at 2843, 97 L. Ed.2d at 246–47 (quoting *Evansville–Vanderburgh*, 405 U.S. at 716–17, 92 S. Ct. at 1355, 31 L. Ed. 2d at 629).

The Pennsylvania fees in *Scheiner* did not fall within the parameters outlined in *Evansville–Vanderburgh*. Instead they subjected the non-resident carriers to a

higher charge per mile, and the fees did not fairly approximate the cost or the value of the use of Pennsylvania's roads. *Scheiner*, 483 U.S. at 290, 107 S.Ct. at 2844, 97 L.Ed.2d at 247. The Rhode Island decal fee is distinguishable because there was no evidence put forth to indicate that Seibert must have a higher cost per mile than resident motor carriers or that the $10 did not fairly approximate the cost of administering the decal scheme.

Seibert has cited a plethora of cases that invalidate flat taxes. The District Court correctly noted that in every case the disputed fee was higher than that in Rhode Island or the taxes were retaliatory against certain states involving third-tier or third-structure taxes. We find plaintiff's claim that the decal fee is facially unconstitutional without merit.

### V

■ Seibert also asserts that the decal-fee statute violates the Privileges and Immunities Clause of Article IV, Section 2, of the United States Constitution. He correctly asserts that the fundamental purpose of the Privileges and Immunities Clause is "to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460, 1471 (1948). A state must have a substantial reason for discriminating against a nonresident beyond the mere fact of citizenship. *Id.* at 396, 68 S.Ct. at 1162, 92 L.Ed. at 1471. In *Toomer* the United States Supreme Court allowed a differential between out-of-state and in-state taxes in order to compensate the state for an enforcement burden. We disagree with plaintiff and find that the tax administrator is entitled to impose the decal fee in order to aid in the enforcement of the Fuel Use Reporting Law. The decal-fee requirement does not interfere impermissibly with any fundamental right protected by the Privileges and Immunities Clause. The United States Supreme Court mandated that "the States must treat residents and nonresidents without unnecessary distinctions." *Baldwin v. Fish and Game Commission of Montana*, 436 U.S. 371, 387, 98 S.Ct. 1852, 1862, 56 L.Ed.2d 354, 368 (1978). The District Court correctly applied this mandate from the *Baldwin* Court when it denied plaintiff relief under the Privileges and Immunities Clause. The key phrase in *Baldwin* is "without unnecessary distinctions." The plaintiff, who has the burden to prove that the decal-fee scheme is inappropriate under the United States Constitution, has provided no evidence to indicate that this burden of $10 per year is unnecessary. By failing to present any evidence regarding the administrative costs of the decal scheme or regarding whether the Fuel Use Reporting Law could be implemented on nonresident motor carriers in a different way, Seibert has not overcome the presumption of constitutionality.

■ The District Court found that the relatively small sum involved here and the relatively small discrepancy between the cost of out-of-state residents and in-state residents for identification devices does not offend the Privileges and Immunities Clause. We do not necessarily rely for our decision on the fact that the amount in dispute is so small. It must be recognized that even a smaller fee could offend the Privileges and Immunities Clause if the facts indicated that the fee was for no other purpose than to impose a heavier burden on nonresident motor carriers. However, in the case before us there is no evidence that the purpose of the statute was to punish nonresidents. Instead it is apparent that the fee was a reasonable expense to cover the cost of administering the tax scheme. Without further evidence presented by plaintiff, we cannot determine that a $10 annual fee was excessive.

For all the reasons given, we deny Seibert's claim for a refund. The decal statute as it existed from 1982 through 1987 is constitutional. Given this conclusion, we find it unnecessary to expand on the issue of the retroactivity aspects of the case. The plaintiff has been afforded an adequate and reasonable mechanism to challenge the statute before the tax administrator and again in a de novo hearing before

the District Court. Therefore, the plaintiff's petition for certiorari is denied, the writ heretofore issued is quashed, and the judgment of the District Court is affirmed. The papers of the case are remanded to the District Court with our decision endorsed thereon.