[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Plaintiff John M. Park's (Park) motion to certify a national class pursuant to Super. R. Civ. P. Rule 23(a)(b)(3) and a Rhode Island class under G.L. 1956 § 6-13.1-5.2(b), the Rhode Island Deceptive Trade Practices Act. The Defendant, Ford Motor Company (Ford), filed a timely objection thereto.
 Facts and Travel
On January 26, 2001, Park purchased a new 2001 Ford Ranger 2.5L pickup truck from Rizzo Ford in North Providence, Rhode Island The federally mandated Monroney window sticker on the truck listed the "SecuriLock" antitheft system as a standard feature. The SecuriLock antitheft system consists of a computer chip embedded in the automobile key which allows the engine to start. Park claims that his decision to purchase the 2001 Ranger was based, in part, on the inclusion of the antitheft system as a standard feature.
Some time after the truck was purchased, Park noticed that no dashboard light came on when he attempted to activate the SecuriLock system. When Park took the truck back to Rizzo Ford, he was informed that the antitheft system was not installed. Park complained about the missing system to Rizzo Ford and also to the Ford Motor Company customer service hot line. Eventually, on March 19, 2001, the Rizzo Ford Sales Department contacted Park and told him that he was entitled to a free oil change as compensation for the mistake. On April 17, 2001, a Rizzo Ford representative offered Park $200 toward a different security system because it was impossible to retrofit the Ranger with the SecuriLock system. Park rejected Rizzo's offer to install a comparable security system along with Ford's offer of a filter and an oil change.
Park filed suit against Ford on May 17, 2001, seeking compensatory and injunctive relief. In his second amended complaint, Park alleged violation of the Magnuson Moss Consumer Products Warranty Act (Magnuson Moss Act); 15 U.S.C. § 2310; breach of implied warranty under § 2-314(2)(f) of the Uniform Commercial Code; breach of express warranty under § 2-313 of the Uniform Commercial Code; and consumer fraud under § 3 of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann., §§ 445.901
through 445.922 (West 2002) and Rhode Island General Law 6-13.1-5.2, the Rhode Island Deceptive Trade Practices Act (DTPA or the act). Park's complaint also sought certification of a national class pursuant to Rule 23(a)(b)(3) of the Superior Court Rules of Civil Procedure and a Rhode Island class under DTPA .
In August 2002, this Court dismissed sua sponte Park's claims for damages pursuant to § 8-2-14 for failure to plead the jurisdictional minimum of $5,000. Moreover, finding no basis for injunctive relief, this Court ruled that it did not have subject matter jurisdiction pursuant to § 8-2-13. Park appealed and in February 2004, the Supreme Court held that all but the DTPA claim were properly dismissed for lack of subject matter jurisdiction. Park v. Ford Motor Co., 844 A.2d 687, 691 (R.I. 2004), and remanded the case so that Park's DTPA claim could be adjudicated. Id. at 694. A class certification hearing took place in the Superior Court on May 25, 2004. Both Park and Ford submitted post-hearing memoranda in support of their respective positions.
 Class Certification
The task of determining the applicable law in this case is complicated by the coexistence of two enactments governing the creation of class actions. The first and most cited standard is Rule 23 of the Super. R. Civ. P., which states:
 "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
The second standard for class actions can be found within DTPA itself. DTPA is a consumer protection statute that provides for a private right of action for injury caused by unfair or deceptive trade practices. The pertinent provisions reads:
 "Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2, may bring an action under Rules of Civil Procedure in the superior court of the county in which the seller or lessor resides, is found, has his or her principal place of business, or is doing business, or in the superior court of the county as is otherwise provided by law, to recover actual damages or two hundred dollars ($200), whichever is greater."
R.I. Gen. Laws § 6-13.1-5.2 (a). Additionally, the Rhode Island General Assembly affords a plaintiff who has been injured by an unfair and deceptive trade practice the right to sue on behalf of those similarly situated. R.I. Gen. Laws § 6-13.1-5.2(b). This statutory class action is provided for in section (b) of DTPA, which reads:
 "Persons entitled to bring an action under subsection (a) of this section may, if the unlawful method, act, or practice has caused similar injury to numerous other persons similarly situated and if they adequately represent the similarly situated persons, bring an action on behalf of themselves and other similarly injured and situated persons to recover damages as provided for in subsection (a) of this section."
Id. (emphasis added). In other words, in order for the Plaintiff to take advantage of this provision, he must prove that: (1) other people suffered similar injury, (2) they are numerous and similarly situated and (3) the plaintiff can adequately represent the similarly situated persons.
Of the two class action provisions, Rule 23 would have been the appropriate one had Park met the jurisdictional threshold for his federal, U.C.C. and Michigan state law claims. However, Park could not establish that each individual claim met the $5,000 threshold of § 8-2-14
so the out-of-state claims were dismissed. See Park, 844 A.2d at 691
(confirming that the hearing justice correctly applied recent case law prohibiting aggregation of claims in order to meet the jurisdictional requirements). Because the sole remaining claim is under DTPA, the provision found in § 6-13.1-5.2(b) for establishing a class is the applicable law.
The same conclusion follows from using the rules of statutory construction, which suggest that the statutory class action provision under DTPA should be viewed as an exception to the class action requirements under the rule. A rule of court, if promulgated under proper judicial power, has the same force and effect as a statute. Letendre v.Rhode Island Hosp. Trust Co., 60 A.2d 471, 281 (1948). Both Rule 23 and DTPA deal with formation of a plaintiff class and so can be considered in pari materia. See Stebbins v. Wells, 2001 WL 1255079 (R.I. Super. Ct. 2001) (noting that statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object); see also 2B NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 51.03 (6th ed. 2000) (citing Oscar Mayer Co. v. Evans, 441 U.S. 750 (1979)). The general rule concerning such statutes is that they should be construed so that they will harmonize with each other consistent with their scope. In re:Doe, 717 A.2d 1129, 1132 (R.I. 1998).
In this case, there is a conflict between the two provisions because DTPA provides a less stringent standard than Rule 23. Namely, the commonality and typicality requirements of Rule 23 are not expressly present in DTPA. Additionally, the class action provision under DTPA is more specific than the rule because it only arises in the context of consumer protection litigation. According to the accepted mores of statutory construction, a specific statute prevails over a general one.Park, 844 A.2d at 694 (the "any ascertainable loss" language of DTPA's §6-13.1-5.2(a) trumps the "amount in controversy" threshold set forth in the general jurisdictional provisions of § 8-2-14(a)); St. Germain v.City of Pawtucket, 382 A.2d 180, 181 (1978) (per curiam). Of course, this rule will not be followed when it appears that the legislature intended to make the general act controlling. 2B NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 51.05 (6th ed. 2000). There is no evidence that the General Assembly intended for Rule 23 to be applied in consumer protection cases, rather, to the contrary, it is evident that DTPA is an alternative procedural mechanism for class litigation. Therefore, the DTPA controls.
It is valuable to note that Massachusetts takes a different approach regarding the relationship between Rule 23 of the Massachusetts Rules of Civil Procedure and its own consumer protection statute. In Massachusetts, Rule 23 and the act are practically superimposed. The Massachusetts statute, Chapter 93(A), like DTPA, provides for a private right of action and class action for injury resulting from unlawful business practices. The applicable section regarding class action states:
 "Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons; the court shall require that notice of such action be given to unnamed petitioners in the most effective practicable manner. Such action shall not be dismissed, settled or compromised without the approval of the court and notice of any proposed dismissal, settlement or compromise shall be given to all members of the class of petitioners in such manner as the court directs."
Mass. Gen. Laws ch. 93(A) § 9(2) (2004) (emphasis added). Like DPTA, Chapter 93(A) requires that the plaintiff prove similar injury, numerosity of similarly situated people and adequate representation. Notably, the Rule 23 requirements of typicality and commonality are not mentioned.
The Massachusetts Supreme Judicial Court recognized difference between the statute and the rule stating that "the statute has a more mandatory tone." Baldassari v. Public Finance Trust, 337 N.E.2d 701, 706 (Mass. 1975) (superceded by statute on other grounds). The Court further expressed that ". . . the statute was designed to meet a pressing need for an effective private remedy, and [we] again declare that traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice." Id. Nevertheless, the Court, without explanation, concluded that, "[d]oubtless, the other two requirements of Federal and Massachusetts Rules 23 (a) must also be met: there must be common questions of law or fact, and the claims of the named plaintiff must be typical." Id.
 Baldassari was expanded by Fletcher v. Cape Cod Gas Co., which implied that Chapter 93(A) may even be subject to the maintainability requirements of Rule 23(b). 477 N.E.2d 116, 123 (Mass. 1985). InFletcher, the plaintiffs had met all the requirements of Rule 23(a), Id.
at 119, but the Court affirmed denial of class certification explaining,
 "[w]e recognize that the Rule 23(a) requirements provide a useful framework for an analysis under § 9 (2). However, we cannot say that a finding that the plaintiffs satisfied each of these four elements with respect to certification under rule 23 automatically entitles them to certification under § 9 (2)."
Id. at 123. The Court rationalized that,
 "The potential for abuse of the class action provision of c. 93A would exist if we were to accept the plaintiffs' argument that a showing which meets the standards of our rule 23 (a) must result in certification under § 9 (2). Judges considering whether the requirements of rule 23 (a) have been satisfied do so with a view toward their ability to exercise the discretion afforded them under rule 23 (b). To read these requirements and the cases interpreting them out of context could lead to results which would not serve the purpose of c. 93A or serve the best interests of the parties involved."
Id. at 123. Nine years later, in accord with the Fletcher line of reasoning, the Superior Court in Langevin v. Vertical Club Spa, 1994 Mass. Super. LEXIS 749 at 3 (1994), denied class certification on the grounds that that the Rule 23(b) requirement that a class action be the superior method of adjudication was not met.
This Court does not feel compelled to follow Massachusetts in this regard. DPTA should not be confused with Rule 23, although it "provides a useful framework." The rules for statutory construction provide a principled method for determining the controlling law when two enactments coexist. This affords the General Assembly its due deference as a co-equal branch of government. See Labor Ready Northeast, Inc. v.McConaghy, 849 A.2d 340, 347 (R.I. 2004) (emphasizing that if the General Assembly had intended the word "instrument" in a check-cashing statute to apply only to "negotiable instruments," it easily could have and would have said as much by defining that term narrowly within the statute's text, just as it did when it narrowly defined "instrument" in the Rhode Island enactment of U.C.C. article 3).
 Analysis
The first requirement that Park must prove is that the putative plaintiffs suffered a similar injury. This is easily proved by Park. The DTPA defines unfair methods of competition and unfair or deceptive acts or practices as, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have." R.I. Gen. Laws § 6-13.1-1.1(5)(v). Ford admits that the Monroney sticker listed the SecuriLock feature as coming standard on the 2001 Ford Ranger 2.5L pickup when in fact it did not. This is prohibited conduct under the statute because Ford represented that the pickup had a characteristic that it did not have. As a result, the putative plaintiffs suffered similar injury when they bought the truck, i.e., they received a truck that was not in conformance with the representation of the seller.
The second requirement is the existence of numerous plaintiffs. The purpose of a class action is to avoid a multiplicity of suits and to promote judicial economy. Seibert v. Clark, 619 A.2d 1108, 1111 (R.I. 1993) (discussing class actions under Rule 23). To this end, class actions are recognized when the interested parties to a suit are numerous. Id. In order to determine whether numerosity is present, the court must identify the potential members of the class and then decide whether they are numerous.
Composition of the class depends on the law forming the basis for the claim and the Rhode Island conflict of law rules. First, as a result of the Supreme Court's ruling, the Rhode Island DTPA violation is the only remaining cause of action. Second, because the putative class members' claims would be governed by the law of the state where the sales contract was executed, contracts executed outside of Rhode Island would not be governed by DTPA. See Zarella v. Minn. Mut. Life Ins. Co., 824 A.2d 1249, 1264 (noting that because Rhode Island still follows the First Restatement Approach to choice of law issues, the governing law is that of the place of contract execution). When these two propositions are considered together, it follows that only claimants who bought a 2001 Ford Ranger pickup in Rhode Island may be considered potential members of the class.
Next, it is necessary to determine whether the Rhode Island claimants are numerous. Numerous is an inherently ambiguous term because it has no intrinsic meaning. It is merely an adjective that means many. There is no Rhode Island case law defining this critical term within the context of DTPA. See generally Scully Signal Co. v. Joyal, 881 F. Supp. 727
(D.R.I. 1995) (standing); Chavers v. Fleet Bank, 844 A.2d 666 (R.I. 2004) (exemption); ERI Max Entertainment, Inc. v. Streisand, 690 A.2d 1351
(R.I. 1997) (standing). Since there is no Rhode Island case law to lend understanding to the word "numerous" as used in DTPA, this Court may refer to extrinsic authority. The obvious source for guidance on this matter is case law under Rule 23. The language and purpose of Rule 23 is similar to DTPA, therefore analogy is appropriate. Cf. Labor Ready,849 A.2d at 348 (cases under the U.C.C. are not an appropriate source for the definition of "instrument" as found in R.I. Gen. Laws § 19-14-1
because article 3 (negotiable instruments), article 9 (secured transactions) and a check cashing statute have different purposes).
According to evidence submitted by the Plaintiff, only twelve people from Rhode Island were affected by the SecuriLock issue. Pl.'s Reply Memorandum in Support of Pl.'s Amended Motion for Class Certification, Exhibit B. While there is no case law setting a minimum threshold, it is not impractical to join twenty claimants from the same geographic area.See Murray v. Norberg, 423 F. Supp. 795, 798 (D.R.I., 1976) (observing that the numerosity requirement of Rule 23 of the Federal Rules of Civil Procedure was not met by a class of fewer than twenty putative plaintiffs because joinder was clearly practicable and each of the class members could be easily located and informed of the pendency of the action); HERBERT NEWBERG AND ALBA CONTE, NEWBERG ON CLASS ACTIONS § 3.05, at 3-25 (3d ed. 1992) (documenting eleven cases from various jurisdictions that held that classes of less than one hundred members did not meet the numerosity requirement); contra Fletcher v. Cape Cod GasCo., 477 N.E.2d at (assuming without deciding that fourteen plaintiffs were numerous). Because all the plaintiffs live in or near the Rhode Island and twenty people can be joined in a lawsuit, numerosity is not present.
Lastly, only Park has filed suit, indicating that he is not part of a class but acting as an individual. Siebert, 619 A.2d at 1111 (denying class certification because only the plaintiff demanded a tax refund);Lengevin v. Vertical Club and Spa, 1994 Mass. Super. LEXIS 7491 (holding numerosity under the Massachusetts consumer protection statute was not met because only two people complained). There is no danger of multiplicity of suits in this case. Thus, the underlying purpose for certifying a class action would not be advanced if certification were granted.
Because Park has not carried his burden of proving numerosity, no further analysis of DTPA is required. Class certification is denied or perhaps, more appropriately, this Court finds that Park has not shown that he can satisfy the provision of § 6-13.1-5.2(b) so as to be able to bring this action not only on his behalf but on behalf of other similarly injured and situated persons.
Defendant's counsel shall present an order consistent herewith to be entered after notice to counsel for the Plaintiff.